## The Pennsylvania Railroad Company *versus* Goodman.

62　329
172　534
62　329
178　524
62　329
41SC 4169

1. If a traveller in crossing a railroad is injured either by his own misfortune or fault, the company is not liable.

2. Where a traveller is injured crossing a railroad on a public road, negligence is not to be presumed against the company.

3. In such case each is in the lawful use of a highway; the traveller is bound to approach the railroad cautiously and to observe the approach of trains, and the company to give proper and timely warning of their coming.

4. In an action by a husband for the death of his wife by negligence the court charged: "That damages should be given as a pecuniary compensation, the jury measuring the plaintiff's loss by a just estimate of the services and companionship of the wife, of which he was deprived by this accident; that is, of their value in a pecuniary sense—nothing is allowable for the suffering of the deceased, nor for the wounded feelings of the plaintiff. Of course, the jury will examine the testimony to aid them in ascertaining the damages. But if damages are to be given at all, there is no reason why they should be nominal merely; they should be a just compensation for the value of the companionship and services lost to him by reason of this unfortunate collision." *Held* not to be error.

May 24th and 25th 1869. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., absent.

Error to the Court of Common Pleas of *Lancaster county* : No. 42, to May Term 1868.

This was an action by Jacob K. Goodman against The Pennsylvania Railroad Company for negligence which occasioned the death of his wife. On the 5th of November 1864, about 3 o'clock P. M., the plaintiff, who was a farmer, and his wife were riding in a small market-wagon without a top, drawn by one horse. They were returning from Lancaster to their home, about ten miles distant, on a much travelled road known as the Colebrook road. About four or five miles from Lancaster the railroad of the defendants crosses the Colebrook road. As the plaintiff and his wife were crossing the railroad at this point, the "Fast Line" of the defendants struck the hinder part of the plaintiff's wagon, upset and broke it, threw him and his wife out, and so injured her as to cause her death in a few hours. The case will be understood from the points of the parties, their answers, and the charge of Judge Hayes, who tried the case below, and the opinion of the Supreme Court, without any further statement.

The verdict was for the plaintiff for $9150.

The following are points submitted by the plaintiff and their answers :—

2d point. "If the jury believe that the defendants approached this crossing at an imprudent, unreasonable and dangerous rate of speed (this crossing being upon the Colebrook road, being an ancient, well-known and much travelled road), this would be negligence for which they must answer."

Answer: "If they did this without the observance of their own regulations, with respect to giving the proper signals for notice and warning, they were guilty of negligence, and if the plaintiff neglected no precaution he ought to have taken under the circumstances, they would be responsible in damages."

4th point. "The rules of defendants requiring that notice shall be given a quarter of a mile off, by a railroad train approaching the crossing of a public road, the plaintiff had a right to expect such rules would be observed, and it not even being alleged that such notice was given in this case, negligence is admitted, and the plaintiff, in consequence thereof, would be excused from exercising the same vigilance called for under different circumstances."

Answer: "If such notice was not given, although the plaintiff would not be required to exercise the extreme caution which he would be if he heard the alarm, or saw and heard the train approaching, yet he was bound, as every man in crossing the railroad in ordinary prudence is bound, to look in all directions in which trains may approach, and to pause until he found he could cross with safety."

9th point. "In estimating the damages and compensation of the plaintiff, the jury will consider all the circumstances, the

[Pennsylvania Railroad Co. *v.* Goodman.]

situation, that of the family, the frugality, industry and usefulness of the wife and mother, and the loss to them, and also the charges and expenses incurred in consequence of the injury to her, and her death."

Answer: "I think the jury may take into consideration the facts and circumstances mentioned in this proposition, if they find the defendants, upon the entire evidence in this case, responsible, when they are estimating the damages and compensation of the plaintiff."

The following are points submitted by the defendants and the answers:—

6th point. "Before the plaintiff can recover in this case he must show affirmatively that he stopped before he reached the track, and looked along the same and saw no approaching train, and that there is no evidence whatever to sustain a finding that he so stopped or looked, and therefore the law presumes negligence on his part, and the verdict must be for the defendants."

Answer: "So far as this proposition involves the order of proof in the trial of the cause, it seems to be unnecessary after the evidence is all before the jury, so far as it is intended to exhibit the *onus probandi* its correctness may be doubted. The plaintiff's action may be sustained by showing his injury to have been done by the defendants, and to have been the consequence of their negligence; then the defendants may controvert the fact, and may show also in their defence that the injury was caused wholly or partially by the negligence of the plaintiff himself; and the defendants' showing of this defeats his action."

7th point. "It is a fact established by the weight of the evidence in this case, that the approach of the westward-going train was clearly visible to a person passing northward on the Colebrook road for the distance of about 1700 feet along said road; the railroad itself, a single track railroad, being clearly visible for more than 2000 feet all the way to the crossing, and it was negligence in the plaintiff not to have perceived its approach under these circumstances, he riding in an open wagon, between the hours of 2 and 3 o'clock in the afternoon, and that such negligence prevents his recovery in this case."

8th point. "It is shown by the evidence on both sides, and is a fact established by the weight of the evidence in this case, that the approach of a train from the east was both visible and audible to one passing along the Colebrook road from the south, at ample distance to have enabled one, either looking or listening, to have stopped in time to have prevented the possibility of a collision; and, under these circumstances, the law presumes negligence in the plaintiff, who was approaching the crossing in an open wagon, between the hours of 2 and 3 o'clock in the afternoon, and requires that the verdict should be for the defendants."

Answer: "That if, upon a full, careful and deliberate review of all the evidence in this case, the jury find that the approach of the westward-going train was clearly visible to a person passing northward on the Colebrook road, for the distance of about 1700 feet along the said road, the railroad itself, a single track railroad, being visible for more than 2000 feet all the way to the crossing, and that the plaintiff was riding in an open wagon along the Colebrook road, between the hours of 2 and 3 o'clock in the afternoon, towards the crossing of the railroad; that the approach of the train from the east was both visible and audible to him, thus passing along the Colebrook road from the south, at ample distance to have enabled one, either looking or listening, to stop in time to prevent the possibility of a collision; if, under these circumstances, he did not stop, but drove on and thereby encountered the collision, these facts so found would amount to such negligence on the part of the plaintiff as would legally debar him from a recovery, and the verdict in that case should be for the defendants."

9th point. "Upon the whole evidence, the law of the case is with the defendants, and the plaintiff cannot recover."

Answer: "If, upon the whole evidence, it is proved to the conviction of the jury that the plaintiff, in riding along the Colebrook road, towards the crossing, might have seen, if he had looked for the approaching train, and that he either did not look, or seeing, did not regard its approach, nor stop, but drove forward, and was struck by it on the crossing, this state of facts would, in point of law, constitute negligence on his part, and prevent his recovery in this suit."

10th point. "Damages, if recoverable at all, are to be strictly limited to a pecuniary compensation for a pecuniary loss suffered by the plaintiff, and nothing can be allowed for the suffering of the deceased, or as solace for the wounded feelings of the plaintiff."

11th point. "The jury are not at liberty to conjecture these damages, but must find their measure in the evidence actually given in the case, and, as the plaintiff has failed to furnish such proof, damages, if given at all, must be merely nominal."

Answer: "Damages in a case like this, where the plaintiff is entitled to recover, should be given as a pecuniary compensation, the jury measuring the plaintiff's loss by a just estimate of the services and companionship of the wife of which he was deprived by this accident—that is, of their value in a pecuniary sense—nothing is allowable for the suffering of the deceased, nor for the wounded feelings of the plaintiff. Of course, the jury will examine the testimony to aid them in ascertaining the damages, as well as every other point in the issue they are trying. But if damages are to be given at all, there is no reason why they should be nominal merely; they should be a just compensation for the

value of the companionship and services lost to him by reason of this unfortunate collision.''

The court charged :—

" On the 5th of November 1864, Jacob K. Goodman and his wife, returning home from Lancaster, in the afternoon, came in collision with the fast train of the Pennsylvania Railroad Company passing west, at the intersection of the railroad with the public road or highway over which they were travelling, between 4 and 5 miles from this town; in consequence of which collision, his wagon was broken to pieces and his wife thrown out, caught upon the truck of one of the cars, dragged to some distance, and crushed, bruised, and mangled to such an extent that she died in seven hours afterwards. The evidence, I think, has enabled you to follow both the train in its schedule speed of 27 miles an hour, and the plaintiff passing over the Colebrook road towards the crossing, at a rate of probably not more than 4 miles in the same time, and to have found a just and true idea of all the incidents accompanying the progress of each, up to the moment of the unfortunate collision.

" Had there been no testimony except what pertained to a single fact of the collision and its result in the injury and death of Mrs. Goodman, your investigation would have been directed to the inquiry alone, whether the injury was owing to the negligence of the defendants or their agents ; and in that case, if the plaintiff showed any want of care or due management on his part—no matter how grievous and terrible his loss—he would not have been entitled to recover damages from the defendants.

" On the other hand, if, in such a case, he could have shown and convinced the jury that the company or their agents, the engineers and conductors of the train, had neglected any precautions they were bound to take, and that the accident and injury had occurred in consequence of their negligence, he would be entitled to recover such damages by the verdict of the jury as would afford a pecuniary compensation for his loss.

" If, therefore, the jury, after sifting all the evidence in this case, should come to the conclusion that there was no undue want of care and precaution on the part of the defendants or their agents in approaching the intersection of the Colebrook road with the railroad, on the occasion when this collision took place, the plaintiff would not be entitled to recover.

" But should you believe that something was omitted by them, which they ought to have done, that there was some fault, some negligence in their proceedings, then you will inquire whether the plaintiff encountered this great misfortune by any want of care, of proper vigilance, or by any fault on his part; whether he did anything or omitted anything, the doing or omission of which

[Pennsylvania Railroad Co. *v.* Goodman.]

contributed to the accident.   If he did, though there were negligence or fault on the part of the defendants, yet he cannot recover. If the plaintiff, in driving towards the crossing, heard the train and saw it approaching, and instead of stopping, drove on, under a mistaken belief that he could cross the railroad before it reached the intersection, the fault of such miscalculation was his own, and a proof of such negligence as would prevent a recovery against the defendants.   If he saw and heard the train, and yet drove so near that his horse became ungovernable, and ran upon the railroad, it was his fault not to have stopped his horse further from the railroad, and was such negligence as would preclude a recovery by him.

" If, from the relative situation of the Colebrook road and the railroad in the neighborhood of this crossing, the plaintiff, driving along the former towards the intersection, could with ordinary care and attention have seen and heard the train for such a distance on its approach as to have checked his horse, and remained at a safe distance until the train passed by, and he took no care and paid no attention and drove heedlessly on and encountered the collision, this was such negligence as the law condemns, and would preclude him from recovering any damages in a suit against the defendants.

" In all these cases, though there may have been some fault or neglect on the part of the defendants, yet the plaintiff cannot recover because his own negligence contributed to the disaster, and the law is clear that if such be the case, he can have no just claim of damages from another.

" The law is founded in reason, is held to be, and ought to be, the perfection of reason.   It is reasonable and just that no man should derive advantage from his own wrongdoing; that no man should claim a benefit from his own mistake; that as no man can come into court seeking equity but with clean hands, so no man should be allowed to recover from another for hurt or damage suffered by him from an accident occasioned wholly or in part by his own misconduct, mistake or carelessness.

" If it be wholly the effect of his own fault, there cannot be a shadow of doubt that his complaint against another is perfectly groundless, and if he has united by his carelessness or recklessness or want of caution in producing the disaster—if, says the law, he has contributed to it—the wrong is his own, and he has no right to complain, and no cause of action.

" I thus lay down the law as applicable to cases of this sort.   The questions which are raised in regard to the actual history of this case, I leave to the jury, whose province it is to decide them, and who are under a solemn obligation to decide them according to the evidence; that is to, say, you are bound to find the real truth

of the facts guiding your judgment by all the testimony in the case. In considering the diverse statements of the witnesses, you are the sole judges of their credibility, and you also must determine for yourselves the weight to which their testimony is entititled, where there is a conflict or contrariety in the statements, as there may be without contradiction, as in cases of affirmative and negative testimony, when, for instance, one passenger swears he heard the alarm whistle at a certain time, and another swears that *he* did not hear it—both may speak the truth, though their testimony be diverse; yet in such a case the whistle *did* sound, otherwise he who swore that he heard it did not speak truly.

"And it is a general duty, where there is a contradiction among witnesses, to reconcile the evidence, if possible, and to ascertain the truth by the most careful scrutiny of all the testimony given; the whole testimony, in other words, must be carefully examined by the jury, and the truth must be found as shown by all the evidence thoroughly sifted and weighed. Of the facts of sounding the alarm whistle by the defendants' agents in their train, when approaching the intersection of their road with the Colebrook road, at the proper time, according to the company's regulations and in the proper manner, and of the actual speed with which they approached the crossing, you are thus to judge. Of the facts with respect to the relative situation of the two roads, the opportunity of seeing and hearing the approaching train by the plaintiff when driving along the Colebrook road to this crossing; of his having seen and heard the train; whether he tried to cross before it passed, seeing and hearing its approach, or not, you are also to judge by the same means.

"After commending this case to your most careful consideration, I have only to add, that if you should arrive at the conclusion that, according to the evidence in regard to the facts and the law as given to you by the court applicable to the facts which you find to be proved, the plaintiff is entitled to recover, you will inquire and assess the amount of the damages to be awarded to him for the injury he has sustained. The law is, that the damages for such an injury are to be a pecuniary compensation, to be measured by the value of the loss of service and companionship sustained by the plaintiff. There is evidence before you in relation to the condition of the family of the plaintiff, his occupation and business, the age, health and character of his wife for industry and careful management. These are all considerations that may enable you to form a correct judgment as to the amount of damages you should award the plaintiff if, according to the law and the evidence, he ought to recover.

"You will have observed, from what has been said, that the natural and convenient course of your inquiries will be:

[Pennsylvania Railroad Co. *v.* Goodman.]

"1. To consider whether, according to the evidence, negligence on the part of the defendants, or their agents, has been proved in this case. If it has not, you need not inquire further, but your verdict should be for the defendants.

"2. If it has, then you will inquire whether the evidence shows that there was also negligence on the part of the plaintiff contributing to this disaster. If there was such negligence, then your investigation will there terminate, and you should find a verdict for the defendants.

"3. But if negligence be proved on the part of the defendants, and it be not proved that there was negligence on the part of plaintiff, then your verdict ought to be for the plaintiff; and you should proceed to ascertain the damages which will afford him a just pecuniary compensation for his loss."

The defendants removed the case to the Supreme Court, and there assigned for error the answers to the points as given above.

*G. F. Brenneman* and *T. Cuyler*, for plaintiffs in error.—The defendants had a right to change their own regulations : Skelton *v.* London and N. W. Railway Co., Law Rep. 2 C. P. 631. As to measure of damages : Penna. Railroad Co. *v.* Kelly, 7 Casey 372 ; Same *v.* Zebe, 9 Id. 318 ; Same *v.* Ogier, 11 Id. 60 ; Heil *v.* Glanding, 6 Wright 493 ; Penna. Railroad *v.* Vandever, 12 Casey 298. On the facts, negligence on the part of the plaintiff was a conclusion of law : Railroad Co. *v.* McClurg, 6 P. F. Smith 297. The law required the plaintiff to prove affirmatively that he stopped and looked along the track : Catawissa Railroad *v.* Armstrong, 13 Wright 191 ; Gahagan *v.* B. & L. Railroad, 1 Allen 190 ; Wilson *v.* Charlestown, 8 Id. 187 ; Shaw *v.* B. & W. Railroad, 8 Gray 73 ; Warren *v.* Litchburg Railroad Co., 8 Allen 137 ; Butterfield *v.* Western Railroad Co., 10 Id. 532 ; O'Brien *v.* The Philada. Wilmington & Balt. Railroad Co., 3 Phila. R. 76. The plaintiff is chargeable with knowledge if he had such opportunities of knowledge as with ordinary caution would have saved him from danger : Penna. Railroad *v.* Henderson, 7 Wright 453 ; Stubley *v.* London and N. W. Railway Co., Law Rep. 1 Exch. 13 ; P. F. W. & C. Railroad *v.* Evans, 3 P. F. Smith 250 ; Heileman *v.* The N. P. Railroad Co., 13 Wright 60 ; Telfer *v.* The Northern Railroad Co., 1 Vroom 188.

*O. J. Dickey* and *N. Ellmaker*, for defendant in error.—The question of negligence was for the jury : Philada. & T. Railroad *v.* Hagan, 11 Wright 248 ; Steamboat N. World *v.* King, 16 How. 469. Not blowing the whistle was negligence : Penna. Railroad *v.* Ogier, 11 Casey 71 ; Reeves *v.* Del. Lackaw. & W. Railroad, 6 Id. 454 ; Beatty *v.* Gilmore, 4 Harris 463 ; Hanover Railroad Co. *v.* Coyle, 5 P. F. Smith 401.

The opinion of the court was delivered, July 6th 1869, by

AGNEW, J.—The verdict in this case appears to us to have been very unwarranted, and ought to have been set aside. The evidence of negligence on part of the plaintiff below in approaching the railroad crossing is very strong. An accurate survey of the road travelled by the plaintiff and the railroad has been made. Seventeen hundred feet of the Colebrook road by which the plaintiff approached the crossing has a descending grade to the railroad of 48 feet, diminishing gradually and with very little unevenness. The civil engineer, in walking these 1700 feet, kept his eye on the whistling post from which the train had come, and which stood 825 feet from the crossing, and he testifies he had the post in sight all the way to the crossing, except at a single spot where he lost the view, but could regain it by a single step backward or forward. The plaintiff's witnesses admit that the railroad track is in sight all the way except at a spot from 15 to 20 yards from the crossing. Thus, for 1700 feet the railroad is clearly in view until the traveller on the Colebrook road reaches within 60 feet of the crossing, and then the view is intercepted only a few feet. This was to the eyes of persons on foot; but the seat of an ordinary light wagon is about 4 feet from the ground, while to the eye of a man of ordinary height it is about $2\frac{1}{2}$ feet more from the seat, making about $6\frac{1}{2}$ feet from the ground, thus giving to one seated in a wagon a foot or more height. The speed of the train at this point was according to schedule-time 27 miles an hour, and by the testimony of the engineer and another, 28 miles. The speed of the plaintiff was 4 miles an hour or more—but assume $4\frac{1}{2}$ miles. The train then travelled at a speed of $6\frac{2}{10}$ greater than the plaintiff, the former going 41 feet in a second, and the latter $6\frac{6}{10}$ in the same time. Their relative distances from the crossing were therefore as follows: When the plaintiff was 60 feet off the train was 372 feet—plaintiff 133, the train at the whistling post 825 feet, and when the train was one-third of a mile 1760 feet off, the plaintiff was 284 feet. The civil engineer testifies that when standing at a point on the Colebrook road, 50 feet from the crossing, he could see the rodmen on the railroad 1222 from the crossing—at 150 feet he could see 1750—at 250 feet he could see to the mile-post 2000 feet from the crossing, and at the stable 734 feet, he could see along the railroad 2600, and more—while at the top of the rise (1700 feet off) he could see from 3000 to 4000 feet along the railroad. Thus it is ascertainable, from the testimony of both sides, that when the train was 1760 feet from the crossing, and the plaintiff 284 feet, he could see the train approaching while he travelled 224 feet, until he reached the point 60 feet from the crossing where it is said the view is intercepted a few yards, and when he had arrived at this point the train was

12 P. F. SMITH—22

[Pennsylvania Railroad Co. *v.* Goodman.]

within 372 feet of the crossing. The fact that he did see the train is also testified to by seven witnesses, of whom four were passengers having no interest in the suit, all of whom prove his admissions that he saw the train, but his horse became unmanageable, and he could not hold him. Another important fact is, that the locomotive struck the hind wheel of the wagon, showing that the plaintiff must have crossed just in front of the train. Now, the seat of an ordinary wagon to the head of the horse is from 12 to 15 feet. Assuming the latter, and the train was within 93 feet when the horse came to the railroad. Thus we have the case of a traveller in an open wagon, in broad daylight, descending a gradual slope for more than a quarter of a mile within plain view of a railroad upon which a train could be seen coming at a great distance, meeting that train and crossing the track so exactly in time that the hind end of his wagon is struck by the engine. There cannot be a doubt that the event happened either from the unruliness of the horse or from the most culpable negligence of the plaintiff in not looking out for a coming train. It was either his misfortune or his fault, for neither of which was the company liable. And as to the company, the weight of the evidence is, that the engineer gave the signal for crossing the road. Eight witnesses, of whom four were passengers, swear affirmatively that they heard the whistle. On part of the plaintiff, five say they heard no whistle, and five that they heard a whistle at or near the crossing, which some called the downbrake signal. Thus one half contradict the other half, while those who say they heard the downbrake whistle are clearly mistaken, as from the testimony it is clear this train used the Lockridge patent chainbrake, which is controlled by the engineer on the engine. Handbrakes cannot be used with the patent brake, so that there is no need of a signal to the brakeman. The truth, therefore, clearly is, that five of the plaintiff's witnesses corroborate the defendants' witnesses, that the road signal was given, only differing in the place where it was given; to wit, nearer to the crossing.

This is not a case where negligence can be presumed against the railroad company, the plaintiff not being a passenger. Each party was in the lawful use of an appropriate highway, and each was bound to a correlative duty, the plaintiff to approach the crossing cautiously, and to observe the approach of trains, and the defendants to give the timely and proper warning of the coming of the train. From the facts before us we think the verdict ought to have been different and that the court below should have set it aside. Yet we perceive no means of reaching the injustice on a writ of error, without ourselves undertaking to decide the facts which fell within the province of the jury. The credibility of the witnesses, together with the varied facts and contradictions in the testimony,

[Pennsylvania Railroad Co. *v.* Goodman.]

necessarily carried the case to them; and our difficulty is, we cannot say the court erred in point of law without deciding that the judge should have taken the facts from the jury and instructed them peremptorily that the plaintiff was guilty of concurring negligence.   The charge of the court is fair and sound.   A judge is not bound to express his opinion on the facts; though we think in this case he would have done a service to justice, had he pointed out to the jury with some emphasis the true attitude of the case on its facts.

Looking at the entire charge on the subject of damages, we think it clearly confined the damages to a pecuniary compensation for the loss of Mrs. Goodman's service.   The court told the jury in express language that nothing is allowable for the suffering of the deceased, nor for the wounded feelings of the plaintiff.   They said also that the plaintiff's loss was to be measured by a just estimate of the services and *companionship* of the wife.   It is thought that this meant by way of solace for the loss of companionship.   But all the judge said on this point made it evident he did not mean compensation by way of solace, and could not have been so understood by the jury.   Companionship was evidently used to express the relation of the deceased in the character of the service she performed.   He merely meant to say that the loss should be measured by the value of her services as a wife or companion.   The form of expression perhaps was not the best selection of words, yet it certainly meant no more than that the pecuniary loss was to be measured by the nature of the service characterized as it was by the relation in which the parties stood to each other.   Certainly the service of a wife is pecuniarily more valuable than that of a mere hireling.   The frugality, industry, usefulness, attention, and tender solicitude of a wife and the mother of children, surely make her services greater than those of an ordinary servant, and therefore worth more.   These elements are not to be excluded from the consideration of a jury in making a mere money estimate of value.   Finding no error we can reach, the judgment must be affirmed.