606 A.2d 425

**Francis TULEWICZ, Administrator of the Estate of Jane R. Tulewicz, Deceased, Appellant,**

**v.**

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellee.**

Supreme Court of Pennsylvania.

Submitted Dec. 7, 1990.

Decided March 20, 1991.

## OPINION

McDERMOTT, Justice.

In this opinion we are called upon to determine whether an award rendered by a jury in a wrongful death and survival action was excessive.

The record discloses that the appellant decedent, Jane F. Tulewicz, sustained fatal injuries as a result of being struck by one of appellee's buses on January 4, 1979 [1]. A jury trial commenced on February 6, 1985 and concluded on February 13, 1985, with the jury returning verdicts for the appellant in the amount of $2,500,000.00 under the Wrongful Death Act [2] and $250,000.00 under the Survival Act [3]. These verdicts were then decreased by 5% in order to adjust for the percentage of negligence attributable to the decedent. Thereafter delay damages were added thus bringing the total sum due and owing to appellant decedent's estate to $3,947,380.00. SEPTA filed post-trial motions seeking in

[1]. Appellant decedent ultimately passed away on January 16, 1979.

[2]. 42 Pa.C.S.A. § 8301.

[3]. 42 Pa.C.S.A. § 8302.

the alternative, a judgment n.o.v., a new trial, or remittitur. The court ruled on the post-trial motions and denied all with the exception of the motion for remittitur which the trial court granted as to the award of damages in the survival action. That verdict was reduced by $100,000.00 leaving $150,000.00 remaining for the survival action. SEPTA, on appeal to the Superior Court, raised several allegations of trial court error, all of which were deemed to be without merit save one, the excessiveness of the verdict 385 Pa.Super. 665, 555 A.2d 255.[4] In passing upon the sufficiency of a verdict, we have necessarily relied heavily upon the findings of the trial court:

> "It is the duty of the lower Court to control the amount of the verdict; it is in possession of all the facts as well as the atmosphere of the case, which will enable it to do more evenhanded justice between the parties than can an appellate court."

*Bochar v. J.B. Martin Motors, Inc.,* 374 Pa. 240, 241, 97 A.2d 813, 814 (1953).

■ We have given guidance and absent abuse of discretion trust to the appraisal of the trial court.

The Court is not warranted in setting aside, reducing, or modifying verdicts for personal injuries unless unfairness, mistake, partiality, prejudice, or corruption is shown, or the damages appear to be grossly exorbitant. The verdict must be clearly and immoderately excessive to justify the granting of a new trial. The amount must not only be greater than that which the Court would have awarded, but so excessive as to offend the conscience and judgment of the Court.

*Stark v. Lehigh Foundries,* 388 Pa. 1, 23, 130 A.2d 123, 135 (1957). To determine whether the trial court's findings are within those guidelines, we will review the underlying

---

4. SEPTA claims now as it has all along that it is "a Commonwealth Party" pursuant to 42 Pa.C.S.A. § 8501 and therefore its damages should be limited to $250,000.00 as provided by 42 Pa.C.S.A. § 8528. However, since this accident here occurred on January 4, 1979 and the cap on the limitation of damages was not to become effective until December 5, 1980, the statute is inapplicable.

claim. In doing so, we will exclude from the computation of damages the amounts added for delay under the then extant Rule 238. *See Craig v. Magee Memorial Rehabilitation Center,* 512 Pa. 60, 515 A.2d 1350 (1987). Delay damages are not the substance of a claim. They are sanctions that exist independent of the gravamen of a lawsuit. They are designed to speed litigation, to end what should be ended. Swift disposal is a benefit to all. It is designed to confine losses for both parties by early solution. Failure to observe its purpose, as here, can prove expensive. The sanctions of Rule 238 were extant during this litigation and known to all. The risk was incurred with that knowledge and controls the disposition. *See Craig v. Magee Memorial Rehabilitation Center, Id.*

■ Excluding the addition of delay damages to the verdict, we address whether that verdict was excessive.

The verdict of $2,500,000 given the evidence offered was in the hands of the jury. The plaintiff's expert testified that $356,929.00 was the value of lost earning capacity, past and future home services and the loss of guidance, tutelage and general upbringing of her daughter. The value of such loss was not determined by that computation. It was a guide and offered as a basic loss. The jury was entitled to accept or reject that evidence or use it as their life experience dictated. They may well believe a parent of the quality of a deceased mother vitally concerned with her family, as reflected in the evidence here, was worth more than the pay of a day laborer. Not only was she depicted as an excellent mother, but also as a faithful and dutiful wife to her husband's great loss. She was 47 years old at the time of her death with a life expectancy of 34.1 years. More than a hundred years ago we stated:

"The frugality, industry, usefulness, attention, and tender solicitude of a wife and the mother of children, surely make her services greater than those of an ordinary servant, and therefore worth more. These elements are not to be excluded from the consideration of a jury in making a mere money estimate of value."

*Pennsylvania Railroad Co. v. Goodman,* 62 Pa. 329, 339 (1869). The value of such considerations are really of no known price. They are pearls of incalculable value and if they are lost to tortfeasors they must expect that when they leave a family bereft of their treasure, the value is in the hands of a jury of their peers. The jury must consult their own experience of life in determining their value. We are not shocked in conscience with the value they set. Absent unfairness or impartiality, the jury is entitled to the last word. We find no reason to quarrel with their determination in this case.

Accordingly, the Order of the Superior Court is reversed.