640 A.2d 367

Melvie HAINES and Walter Haines Individually and
Melvie Haines as Parent and Natural Guardian
of Tamika Haines, a Minor, Appellants,

v.

RAVEN ARMS, Donn's, Inc., Brenda Teagle and Diane Teagle,
Walter Butler, and Eastern Shooters, Appellees.

Supreme Court of Pennsylvania.

Argued Jan. 24, 1994.

Decided March 29, 1994.

Reargument Denied; Reconsideration Granted
and Record Remanded June 7, 1994.

Robert C. Daniels, Stephen T. Saltz, Larry Bendesky, Philadelphia, for Haines.

Frederic L. Goldfein, Leslie Ann Miller, Roseann Lynn Brenner, Philadelphia, for Donn's, Inc.

Brewington W. Croswell, Philadelphia, for Teagles.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal by plaintiffs below from the grant of a remittitur which reduced damages for pain and suffering from $8,000,000 to $5,000,000, following a jury verdict in the former amount, in a case involving serious and permanent debilitating injuries caused by an accidental shooting 427 Pa.Super. 650, 625 A.2d 96.

The facts in the record and inferences from the facts, taken in the light most favorable to the verdict winner, may be summarized as follows. In 1981, Mrs. Brenda Teagle pur-

chased a handgun for self-protection. She bought a Raven Arms P–25 semi-automatic handgun from Donn's, Inc., and although she knew nothing about firearms, received no instructions, written or oral, on how to load, operate, or store the gun. Mrs. Teagle testified that she would have followed both the manufacturer's instructions and proper oral instructions had they been provided, including loading the gun without a bullet in the chamber. But because no instructions were provided, Mrs. Teagle had a neighbor load the gun, telling him she wanted it to be able to fire immediately; he loaded it with a bullet in the chamber. Two years later, while entertaining two visitors, Mrs. Teagle's daughter Diane showed the gun to Walter Butler, who took the magazine out of the gun and, thinking it was unloaded, pulled the trigger. Diane's other visitor, Tamika Haines, sitting on the other side of the room, was struck in the head by the bullet which was discharged from the gun.

At the time, Tamika Haines was a 14–year–old ninth grader. The bullet entered below her left eye and travelled to the back of her head but remained lodged in her brain. Immediate surgery removed a portion of the skull as well as blood clots and destroyed brain tissue but no attempt was made to remove the bullet at that time as it would have caused additional damage to the brain. During the next five years, Tamika underwent six additional operations including removal of the bullet in 1988, long periods of hospitalization, rehabilitation therapy, outpatient treatment, and special schooling for handicapped children.

Prior to trial, Tamika was diagnosed as suffering the following permanent injuries. She has weakness in one side of her body, impairment of vision on her right side, and loss of cognitive skills which impairs her ability to communicate ideas, her ability to do mathematics, her memory, and her orientation to environment. Her right foot turns inward to some extent, affecting her ability to walk normally. Experts opined that she will require 24–hour supervision for the rest of her life due to impaired physical condition, analytical and differen-

tial thinking, memory, and judgment. An expert testified that her life expectancy was 55 years from the time of trial.

In a bifurcated trial, the jury found the defendants liable for negligence as follows: Donn's, Inc., the seller, 30%; Brenda Teagle, the gun owner, 40%; her daughter Diane, 5%; Walter Butler, the shooter, 25%. Special interrogatories produced the following damages award: medical expenses, $125,802.60; loss of earnings, $725,000; care and supervision, $2,500,000; pain and suffering, $8,000,000; a total of $11,350,802.60.

On motion of Donn's, Inc., a three-judge court en banc remitted the award for pain and suffering from eight to five million dollars. The Superior Court affirmed the remittitur, and this court granted allocatur to consider only this issue.[1]

■ Judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant. The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption. *Carminati v. Philadelphia Transportation Co.,* 405 Pa. 500, 509, 176 A.2d 440, 445 (1962). We have discussed application of this standard at greater length in a more recent case:

> In this area of law we begin with the well-recognized principle that the grant or refusal of a new trial [or remittitur] because of the excessiveness of the verdict is peculiarly within the discretion of the trial court and will not be reversed unless an abuse of discretion or an error of law has been committed. Recognizing the difficult task encountered by an appellate court in reviewing the record when a trial court merely assigns conclusory statements—"interests of justice," "shocks the court's conscience" and "substantial justice"—we have attempted to discourage this practice. In *Hilliard [v. Anderson,* 440 Pa. 625, 271 A.2d 227 (1970)], the defendant was granted a new trial upon the plaintiff's

1. Thus we are not reviewing various issues related to liability which were raised by appellees.

failure to file a remittitur solely because "the verdict shocked the conscience of the court." Primarily concerned with the "shock the conscience" test, we noted, "[t]he court should state the reasons for this conclusion in order that we may have the opportunity of intelligently determining if an abuse of discretion occurred." 440 Pa. at 628, 271 A.2d at 229. We now add the "excessive verdict" conclusion to that list of judicial statements requiring additional, supporting reasons.

*Scaife Co. v. Rockwell–Standard Corp.*, 446 Pa. 280, 290, 285 A.2d 451, 456–57 (1971) (citations omitted).

Application of the *Carminati* standard does not require parroting its language as a talisman, particularly in light of the caution stated in *Scaife Co.* The en banc trial court in this case understandably avoided an assertion that the verdict shocked its sense of justice.[2] Its rationale for granting the remittitur stated, in part:

> As noted, Tamika Haines suffered catastrophic injuries. In essence she has been deprived of the ability to have normal relationships with other human beings. She suffered major memory loss, loss of cognitive abilities, and has trouble walking and using her arms. She had seven major surgeries. She cannot be left alone for long, for fear that she will wander off and be taken advantage of by anyone who comes along. At the same time, she remembers that she was once normal and has difficulty relating to those who she considers "retarded." Clearly, this warrants a significant award.

> On the other hand, she is not in any physical pain, does relate to her family, goes by herself to remedial classes, and can carry out some activities. She is not in the same class as someone who is a quadriplegic or in great constant pain that cannot be treated.

**2.** During argument on the motion for remittitur before the court en banc, one of the judges stated that "the test still remains the same as to whether or not the sum is such that was granted by the jury for pain and suffering shocks the conscience of the Court." N.T., April 23, 1990, at 60–61.

... Three very experienced civil trial judges including the trial judge (who saw all the witnesses and heard all the facts in detail) heard the motions. While the consensus was that $8,000,000 was excessive considering this case in light of other kinds of catastrophic injuries, the consensus also was that $5,000,000 was not excessive. However, it is asking a great deal of a lay jury to fix a figure in a case like this with no experience and precious little guidance. At least the three judges have a long background from which to draw when determining what is excessive and what is not excessive. We believed that the jury figure of $8,000,000 was excessive and should be modified. . . .

The court also referred to six factors suggested by the Superior Court: 1) the severity of the injury; 2) whether the injury is demonstrated by objective physical evidence; 3) whether the injury is permanent; 4) the plaintiff's ability to continue employment; 5) disparity between the amount of out of pocket expenses and the amount of the verdict; and 6) the amount demanded in the original complaint. *See, e.g., Stoughton v. Kinzey*, 299 Pa.Super. 499, 503, 445 A.2d 1240, 1242 (1982). The court found these factors only marginally useful in this case, as not all of them were relevant. The court rather found difficulty in comparing the facts of different cases because each case is unique and dependent on its own special circumstances, citing *Kemp v. Philadelphia Transportation Co.*, 239 Pa.Super. 379, 382, 361 A.2d 362, 364 (1976). The court en banc then noted "the responsibility of the judiciary to keep pain and suffering awards within reasonable bounds in a case such as this where the jury cannot help but have sympathy for the plight of the plaintiff," citing *Daley v. John Wanamaker, Inc.*, 317 Pa.Super. 348, 352, 464 A.2d 355, 357–58 (1983), and concluded "that $8,000,000 was excessive, and that $5,000,000 was not an excessive award for her pain and suffering."

In reviewing the grant of a remittitur, we accord particular deference to the wide discretion of trial judges, and will not reverse unless a clear abuse of discretion or error of law has occurred. *Scaife Co. v. Rockwell–Standard Corp., supra; Connolly v. Philadelphia Transportation Co.*, 420 Pa.

280, 287, 216 A.2d 60, 64 (1966). The en banc court in this case stated, as clearly as possible in the highly subjective task of translating pain and suffering into monetary figures, its reasons for determining that the jury award was excessive and should be remitted. The court's explanation was far more specific than the conclusory statements condemned in *Scaife Co., supra.* Although the trial court did not echo the precise language used by this court in *Carminati,* its explanation for the remittitur evidences its awareness of and proper application of that standard. It granted the remittitur because the verdict was excessive and failed to bear a reasonable relationship to the plaintiff's pain and suffering. Damages for pain and suffering are compensatory in nature, may not be arbitrary, speculative, or punitive, and must be reasonable. The trial court's justification for the remittitur does not manifest an abuse of discretion. Accordingly, the judgment of the Superior Court must be affirmed.

Affirmed.

CAPPY, J., files a dissenting opinion which is joined by ZAPPALA and PAPADAKOS, JJ.

MONTEMURO, J., is sitting by designation as senior justice pursuant to Judicial Assignment Docket No. 94 R1800, due to the unavailability of LARSEN, J.; see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

CAPPY, Justice, dissenting.

I dissent. I am distressed by the Majority Opinion. Its holding completely ignores established precedent which has been recently reaffirmed by this Court. *See Botek v. Mine Safety Appliance Corp.,* 531 Pa. 160, 611 A.2d 1174 (1992); *Tulewicz v. SEPTA,* 529 Pa. 584, 606 A.2d 425 (1991).

The Majority Opinion states that,

the en banc court [which granted remittitur] in this case stated, as clearly as possible in the highly subjective task of translating pain and suffering into monetary figures, its reasons for determining that the jury award was excessive

and should be remitted.... It granted the remittitur because the verdict was excessive and failed to bear a reasonable relationship to the plaintiff's pain and suffering. (Majority Opinion at 458, 459.) This statement not only inaccurately characterizes the clarity of the en banc trial court's "rationale" for granting the remittitur, but also confirms the fact that the trial court applied an incorrect standard.

The Majority correctly asserts, earlier in its Opinion, that the standard to be used in determining whether remittitur should be granted is "whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so *shocks the sense of justice* as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption." (Majority Opinion at 455, citing *Carminati v. Philadelphia Transportation Co.*, 405 Pa. 500, 509, 176 A.2d 440, 445 (1962) (emphasis mine). *See also Tulewicz*, 529 Pa. at 586, 606 A.2d at 426 (1991). However, the Majority fails to apply this standard. Moreover, the Majority states that "the en banc trial court in this case understandably avoided an assertion that the verdict shocked its sense of justice." (Majority Opinion at 456.) I agree that the trial court "understandably avoided an assertion that the jury's verdict shocked its sense of justice," because such an assertion would be patently unsupportable.

Uncontradicted medical testimony clearly established the following. The bullet that struck Tamika Haines entered just above her eye socket and traveled through her brain. The resultant injury to Tamika included blindness in one eye; severe limitations of simple motor skills including walking, standing, and talking; reduction of mental abilities including vocabulary and short term memory skills from the average ranges into the severely impaired and mentally retarded ranges; and a reduction of total I.Q. score from the thirty-seventh percentile to the first percentile.

Qualitatively, Tamika's injury has resulted in an extreme loss of inhibition, rendering Tamika highly impulsive. This loss of inhibition, in conjunction with a lack of mature judg-

ment, leaves Tamika very vulnerable generally, and particularly vulnerable sexually. Further, and perhaps most tragically, Tamika does not understand that she is limited physically, mentally and emotionally. She desires the same relationships, opportunities and responsibilities she enjoyed before the accident, and does not understand why they are no longer available to her. This difference between Tamika's true abilities and her unrealistic perception of her abilities causes a continual mixture of boredom, anger, sadness, and frustration for Tamika.

The trial judge correctly instructed the jury that pain and suffering includes: physical pain, mental anguish, discomfort, inconvenience, distress, embarrassment, humiliation, disfigurement, and the loss of the ability to enjoy the pleasures of life. (Reproduced Record, Vol. II, p. 594a.) The jury, having considered all of these factors and the reality of the inconvenience and suffering of a life governed by such permanent impairments, awarded what it concluded to be an appropriate assessment of damages as dictated by the law and its collective conscience.[1]

Unfortunately for Tamika Haines, notwithstanding the fact that the jury's verdict apparently failed to shock the trial court's sense of justice, the requirement that it apply this standard did not deter the en banc court from granting remittitur. In listing and acknowledging, but failing to analyze its application to the facts of this case, the trial court en banc gave lip service to the most recent decisions of this Court and to the six criteria established by Superior Court decisions

---

1. Given a life expectancy of 75 years, Tamika, who was injured at the age of 14, had a 61 year expected remaining life span at the time of her injury. (Reproduced Record of Appellants, Volume II, p. 371a.) The jury's pain and suffering award of $8,000,000 applied over Tamika's remaining expected life span averages $131,147.54/year, less attorney's fees and costs.

The trial court's remittitur resulted in a $3,000,000 total reduction in the pain and suffering award, which reduction when applied over Tamika's expected remaining life span averages $49,180.33/year.

The remitted pain and suffering award left Tamika with a total award of $5,000,000, which when applied over Tamika's expected remaining life span averages $81,967.21/year less attorney's fees and costs.

which give guidance in granting remittitur. *See Stoughton v. Kinzey,* 299 Pa.Super. 499, 503, 445 A.2d 1240, 1242 (1982); *Kemp v. Philadelphia Transportation Co.,* 239 Pa.Super. 379, 382, 361 A.2d 362, 364 (1976). In fact, the en banc court stated that in its view "*Kemp* provided only limited help in dealing with the specifics of this case" (Trial Court Opinion, at 17), thereby further distancing itself from a recognizable standard.

At best, this Court is forced to guess at what standard may have been applied by the en banc court in its grant of remittitur. Regardless of the standard applied, under the instant facts, I simply fail to recognize in what way the damages estimate made by a three member en banc panel of "very experienced civil trial judges," two members of which were relying solely on a reading of the cold record, could surpass in accuracy the pain, suffering, and inconvenience damages award made by the jury relying on first-hand observations of the evidence and witnesses at trial. The law in Pennsylvania is clear that a court may not declare an award excessive simply because the court, sitting in place of the jury, might have awarded a lesser amount. *Tulewicz,* and *Botek, supra.* A jury verdict should not be set aside unless it is so plainly excessive and exorbitant as to shock the court's sense of justice. *Carminati, supra.*

I am compelled to strongly disagree with this Court's holding which affirms a grant of remittitur, not only where the facts fail to support a finding that the jury's verdict shocks one's sense of justice, but also where the court which granted the remittitur fails completely to either articulate or apply the appropriate standard of review, specifically that the jury's verdict did, in fact, shock its sense of justice.

Since I conclude that the jury's assessment of damages was fair and reasonable under the facts of this case and, as stated above, because it is clear that the lower courts have failed to apply the proper standard of review in granting remittitur, I respectfully but vigorously dissent. Accordingly, I would reverse the Order of the Superior Court, vacate the order of

the trial court en banc, and reinstate the amount of damages as awarded by the jury.

ZAPPALA and PAPADAKOS, JJ., join in this dissenting opinion.