## Mietelski v. Banks

C.P. of Berks County, no. 01-5599.

*Kent D. Mikus,* for plaintiffs.

*Thomas K. Ellixson* and *James Gicking,* trial counsel for defendant.

*John G. Devlin,* appellate counsel for defendant.

SCHAEFFER, *S.J.,* September 15, 2003—Before the court is defendant Kirsten Janice Banks' (appellant) appeal from the final judgment entered July 29, 2003 in the above-captioned matter.

This dispute arose out of an automobile accident that occurred on February 3, 2000 in Shillington, Berks County, Pennsylvania. Plaintiff Eric Mietelski and his wife Bonnie were stopped at a red light on Shillington Road. Appellant saw plaintiffs' stopped car from about two blocks away. Appellant then crashed the vehicle she was driving into the back of plaintiffs' vehicle. Plaintiffs' vehicle spun around and crashed into the back of a truck that was stopped in front of them at the red light. As a result of the crash, Eric suffered a slipped disk in his back, an injury to his SI joint, and aggravated a pre-existing neck injury. Bonnie Mietelski suffered a strain to her lower back. Eric has a guarded prognosis and may never be able to work again.

Plaintiffs filed their complaint on June 1, 2001. On February 7, 2003, this case was reassigned to the undersigned. A jury trial was held on March 24, 2003. At trial, the defendant stipulated to negligence. On March 27, 2003, a verdict was entered in favor of the plaintiffs and against the defendant. Defendant filed post-trial motions on April 7, 2003. Argument was held on the motions on June 20, 2003 and on July 21, 2003, the motions were denied. Judgment was entered on July 29, 2003. Appellant filed her notice of appeal on August 8, 2003. On August 11, 2003, we ordered appellant to file a concise statement of matters complained of on appeal.

In her concise statement, appellant alleges:

(1) Is the defendant, Kirsten Janice Banks, entitled to judgment n.o.v. where plaintiffs failed to present sufficient evidence at trial to establish any of the elements of the wife-plaintiff's claim of negligence, causing the jury to enter an erroneous award?

(2) Is the defendant, Kirsten Janice Banks, entitled to a new trial where the honorable court committed a prejudicial error of law and/or abused its discretion in denying defendant an opportunity to present evidence at trial of the surveillance of plaintiffs, since plaintiffs could not reasonably claim any prejudice to trial preparation resulted from its disclosure having been provided with this evidence more than a week before the presentation of witnesses at trial, and several days before the taking of the videotaped trial deposition of defendant's expert neurologist, Dr. Bennett, causing the jury to enter an erroneous award?

(3) Is the defendant, Kirsten Janice Banks, entitled to a new trial where the honorable court committed a preju-

dicial error of law and/or abused its discretion when the court ruled, pretrial, to preclude the admission of or any reference to, defendant's recent surveillance evidence which was disclosed 10 days before trial and said preclusion was not supported by any showing of unfair prejudice to plaintiff?

(4) Is the defendant, Kirsten Janice Banks, entitled to a new trial where the authority relied upon by plaintiffs did not support the preclusion of defendant's surveillance evidence and related testimony, causing the jury to enter an erroneous award?

(5) Is the defendant, Kirsten Janice Banks, entitled to a new trial where the honorable court committed a prejudicial error of law and/or abused its discretion when the court precluded any reference to the defendant's surveillance evidence during the testimony of the defense medical doctor?

(6) Is defendant, Kirsten Janice Banks, entitled to a new trial where the jury's finding that defendant was negligent as to the wife-plaintiff was against the weight of the evidence, causing the jury to enter an erroneous award?

(7) Is defendant, Kirsten Janice Banks, entitled to a new trial where the honorable court committed a prejudicial error of law and/or abused its discretion in refusing to allow counsel for defendant to cross-examine plaintiffs' vocational rehabilitation expert with respect to certain wage loss figures and other information relied upon by this expert which had been raised and challenged in the report of defendant's expert and which would have otherwise been reasonably anticipated to have been a subject of cross-examination, causing the jury to enter an erroneous award?

(8) Is defendant, Kirsten Janice Banks, entitled to a new trial where the honorable court committed a prejudicial error of law and/or abused its discretion in failing to properly instruct the jury with respect to damages and by instructing the jury that the plaintiff had a certain "entitlement" compensation for damages, causing the jury to enter an erroneous award?

(9) Is defendant, Kirsten Janice Banks, entitled to a new trial where the honorable court committed a prejudicial error of law and/or abused its discretion in failing to permit counsel for defendant to argue during closing regarding the contents of the medical record/report of Dr. Perkins, the basis for his report and the content of certain radiology records which were available to be taken into account causing inferences to be improperly drawn by plaintiff's witnesses, causing the jury to enter an erroneous award?

(10) Is defendant, Kirsten Janice Banks, entitled to a new trial where the verdict was the result of passion, prejudice and improper influence?

(11) Is defendant, Kirsten Janice Banks, entitled to a new trial where the verdict is not in accord with existing law?

(12) Is defendant, Kirsten Janice Banks, entitled to a new trial on the issue of damages because the jury's award of damage was against the clear and overwhelming weight of the evidence?

(13) Is defendant, Kirsten Janice Banks, entitled to a new trial on damages where the honorable court erred in allowing the jury to consider plaintiff-husband's claim of injury when the jury was deprived of an opportunity to observe the surveillance videotape and testimony?

(14) Is defendant, Kirsten Janice Banks, entitled to a new trial where the honorable court abused its discretion or committed an error of law in failing to charge the jury that it was required to consider whether defendant's negligence was a substantial factor in producing Mr. Mietelski's claimed injuries?

(15) Is defendant, Kirsten Janice Banks, entitled to a substantial remittitur of the jury's verdict where the verdict is unsupported by substantial credible evidence, is excessive under the circumstances and shocks the conscience of the community as well as the court?

In her first matter complained of on appeal, appellant asserts that she is entitled to judgment n.o.v. because the plaintiffs failed to present sufficient evidence at trial to establish any of the elements of the wife-plaintiff's claim of negligence. Pursuant to Pa.R.C.P. 227.1(b)(2), post-trial relief may not be granted unless the motion states how the grounds for relief were asserted at trial. Appellant's post-trial motion does not indicate how the sufficiency of the evidence argument was raised at trial. We find that this issue has been waived. See generally, *Bennyhoff v. Pappert,* 790 A.2d 313, 317-18 (Pa. Super. 2001). Further, as to appellant's weight of the evidence issue, while the jury found that appellant's negligence was a substantial factor in causing harm to wife-plaintiff, it awarded her none of the damages she claimed. Therefore, it is a stretch to call this award "erroneous."

Appellant asserts in her next 13 issues that she is entitled to a new trial. It is well settled that the grant of a new trial is a matter within the discretion of the trial court. *Martin v. Evans,* 551 Pa. 496, 711 A.2d 458 (1998). The standard of review of an order denying a motion for a

new trial is to decide whether the trial court committed an error of law that controlled the outcome of the case or committed an abuse of discretion. *Fanning v. Davne,* 795 A.2d 388 (Pa. Super. 2002). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, discretion is abused. *Id.* Nor does the determination in this regard turn on whether the appellate court might have reached a different conclusion, but depends instead on whether there was such lack of support for the trial court's action as to render it clearly erroneous. *Id.*

Five of appellant's issues concern the issue of the admissibility of surveillance evidence. The admission of videotaped evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Commonwealth v. Long,* 425 Pa. Super. 170, 183-84, 624 A.2d 200, 207 (1993), *alloc. denied,* 535 Pa. 645, 633 A.2d 150 (1993). The surveillance tape at issue was filmed January 25, 2003 through and including February 4, 2003, the day jury selection occurred. Plaintiffs had previously requested any such information in discovery. Once they made this request, appellant had a continuing obligation to disclose such information, provided she had had the opportunity to depose plaintiff regarding the extent and effect of his injuries. See *Duncan v. Mercy Catholic Medical Center,* 813 A.2d 6, 10 (Pa. Super. 2002). Appellant had this opportunity during the deposition of Eric, taken on December 21, 2001. (Defendant's exhibit 6.) The tape's existence was not made known to plaintiffs until right before trial; the tape was not made available until the end of the day on the Friday before the deposition of appellant's expert, Dr. Bennett, was taken on the following Monday. Coun-

sel was notified, by fax, at 3:30 p.m. that Friday afternoon, of the existence of the tape. Counsel for plaintiffs were in another town some distance from where it was stated they could come view the tape. Dr. Bennett was appellant's expert witness and was permitted to testify at trial by videotape. Plaintiffs had no opportunity to properly prepare for the cross-examination of this witness about the tape they had just seen prior to the deposition. This is certainly unfair surprise. Also, during jury selection, one of the potential jurors asked plaintiffs' counsel about the existence and use of surveillance tapes and was told that such tapes were not part of the case. But in fact, surveillance had been ordered for that very day! Allowing appellant to admit surveillance evidence after she allowed this impression to stand, when in fact she had ordered taping prior to, and even on that particular day, would have made plaintiffs' counsel look dishonest and their case look like a sham. We find that plaintiffs were prejudiced by this failure to timely disclose the requested discovery concerning any surveillance.

Further, we properly sustained the objections to questions posed to Dr. Bennett based on his viewing of the tape. Surveillance evidence is not the type of evidence customarily relied upon by doctors in rendering medical opinions, and therefore, the tape was not admissible for this purpose. See *Kimberly Clark Corporation v. W.C.A.B. (Bullard)*, 790 A.2d 1072, 1076 (Pa. Commw. 2001). Dr. Bennett could not consider the tape as a reliable basis upon which he could change his opinion in contravention of his opinion in prior reports.

Appellant also alleges the court erred by not allowing counsel for appellant to cross-examine plaintiffs' voca-

tional rehabilitation expert concerning information from the report of appellant's expert. It is well established that an expert may express an opinion which is based on material not in evidence, including other expert opinion, where such material is of a type customarily relied on by experts in his or her profession. *Collins v. Cooper,* 746 A.2d 615, 618 (Pa. Super. 2000). Such material may be disclosed at trial even though it might otherwise be hearsay. Such hearsay is admissible because the expert's reliance on the material provides its own indication of the material's trustworthiness: "The fact that experts reasonably and regularly rely on this type of information merely to practice their profession lends strong indicia of reliability to source material, when it is presented through a qualified expert's eyes." *Primavera v. Celotex Corp.,* 415 Pa. Super. 41, 50, 608 A.2d 515, 520 (1992). In the case of *Boucher v. Pennsylvania Hospital,* 2003 WL 21762600 (Pa. Super.), the Superior Court reversed the trial court's denial of plaintiffs' motion for a new trial where plaintiffs were not permitted to cross-examine the Pennsylvania Hospital's medical expert regarding an expert report prepared on Pennsylvania Hospital's behalf by an expert who was not called to testify at trial. The Superior Court agreed with the trial court that the report was hearsay, but stated that the plaintiffs should have been allowed to refer to the report to the degree required to question the expert's credibility. *Id.* at paragraph 10. The Superior Court said the trial court did not err in rejecting appellants' attempts to cross-examine Pennsylvania Hospital's expert under the expert reliance exception to the hearsay rule. *Id.* at paragraph 12. However, examining the proper scope of cross-examination, the Superior Court held that appellants were entitled to confront the

expert with a discrepancy that refuted the assertions he made on direct, that he had reviewed the report at issue, but made misleading statements in regard to it. The court said that in this type of circumstance, the expert report may be used for the limited purpose of impeaching the credibility of the witness, but would not be admitted as substantive evidence. *Id.* at paragraph 21. The court found this error was not harmless because the sole testifying expert on behalf of Pennsylvania Hospital testified to the central issue in the case, whether trauma could be ruled out as a cause of the injured infant's condition. One aspect of his opinion was his conclusion that there was no suggestion of a cephalohematoma in the records or reports he reviewed. The report at issue belied this conclusion, and cross-examination of the expert on this point could have undermined the expert's credibility and might have affected the verdict. *Id.* at paragraph 24.

The record does not support appellant's contention that trial counsel for appellant, Mr. Ellixson, was not permitted to cross-examine plaintiffs' vocational rehabilitation expert concerning information from the report of appellant's vocational expert. We gave Mr. Ellixson great leeway on cross-examining plaintiffs' vocational expert concerning facts which were not then in evidence on his representation that he would call a Ms. Irene Mendelsohn as appellant's vocational expert witness, and that Ms. Mendelsohn would put these facts in evidence. (Notes of Testimony, 3/26/03, pp. 353-68, 371-76.) Relying on trial counsel's representations, the court allowed him to cross-examine plaintiffs' vocational expert on certain facts from Ms. Mendelsohn's report. In spite of appellant's counsel's explicit promise to the court that he would call Ms. Mendelsohn, he never called her. (*Id.* at pp. 386-

87.) Mr. Ellixson explained to the court later, in the retiring room, that he did not call Ms. Mendelsohn because he changed his "strategy." Counsel was attempting to put facts into evidence, *i.e.,* wages and benefits for sedentary work, with no basis or competent evidence for them. Plaintiffs' expert did not rely on the information in Ms. Mendelsohn's report because she had a problem with Ms. Mendelsohn's basis for the figures; Ms. Mendelsohn neither identified the market area nor did a labor market analysis. (*Id.* at p. 369.) Reports in this field without this basis, and without supporting testimony, cannot be reasonably relied upon. Appellant was also attempting to get the figures from Ms. Mendelsohn's report into evidence without having her expert witness subject to cross-examination and succeeded in doing so. It was proper and necessary, after appellant's counsel got facts from Ms. Mendelsohn's report before the jury without a proper factual basis for them, for the court to instruct the jury to disregard such evidence. If any party had a valid reason to allege error, because of the way the court had previously ruled, relying on appellant's counsel's false statement, it was the plaintiff.

The substantive evidence in the report was inadmissible hearsay without the testimony of the expert. We properly restricted said evidence from coming in as competent evidence, but allowed liberal cross-examination of the witness as to the report itself. Appellant was allowed to refer to the report to the degree required to question the credibility of the testifying expert in relation to her testimony encompassing the report. Plaintiff's expert did not make misleading statements about the report, as had occurred in the *Boucher* case. Further, it is clear that appellant was not harmed because the jury

award did not give Eric the future wage loss damages he asked for, nor what the expert testified were his damages, up to $735,460 for the total value of future wage loss and benefit loss to age 65 (*id.* at p. 351), but reflect a finding that he may be able to do some type of work in the future and be paid for it.

Appellant also alleges that the court committed error and/or abused its discretion in failing to permit counsel for defendant to argue during closing regarding the contents of the medical record/report of Dr. Perkins, the basis for his report and the content of certain radiology records which were available. The presentation of closing speeches is within the discretion of the trial court. *Clark v. Philadelphia College of Osteopathic Medicine,* 693 A.2d 202 (Pa. Super. 1997). While counsel usually has great latitude in his closing argument, he may not present facts to the jury that are not in evidence and which are prejudicial to the opposing party. *Coffee v. Minwax Co.,* 764 A.2d 616 (Pa. Super. 2000). Again, counsel misrepresents what occurred at trial. (Notes of Testimony, 3/27/03, pp. 457-60.) Counsel made a representation that Dr. Perkins did not review certain records that showed no problem in the SI joint. Counsel was trying to argue something that was not in the record of the case and attempting to draw a negative inference without any basis for it. It is improper to comment on matters not in evidence during closing arguments.

Appellant also argues that the court committed an error of law in failing to charge the jury that it had to consider whether defendant's negligence was a substantial factor in producing Eric's injuries. We disagree. We properly applied the law of Pennsylvania in this regard. In

*Andrews v. Jackson,* 800 A.2d 959 (Pa. Super. 2002), *appeal denied,* 572 Pa. 694, 813 A.2d 835 (2002), the Superior Court said that, "[w]here there is no dispute that the defendant is negligent and both parties' medical experts agree the accident caused *some* injury to the plaintiff, the jury may not find the defendant's negligence was not a substantial factor in bringing about at least *some* of plaintiff's injuries." *Andrews* at p. 962. (citations omitted) (emphasis in original) In the case at bar, appellant conceded that she was negligent. Further, plaintiff's experts and the expert for the defendant, Dr. Bennett, agreed the accident caused some injury to Eric. Therefore, the jury would not have been permitted to find that the defendant's conduct was not a substantial factor in causing plaintiff's harm.

Appellant also argues that the trial court erred in not granting a remittitur. Judicial reduction of a jury reward is appropriate only when the award is plainly excessive and exorbitant. "The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake or corruption." *Haines v. Raven Arms,* 536 Pa. 452, 455, 640 A.2d 367, 369 (1994). (citation omitted) The record shows that Eric Mietelski was harmed by the negligence of appellant and will have injuries that may affect him for the rest of his life and may preclude him from ever working again. The record also shows that: Eric claimed he had $29,824.68 in past medical expenses; the jury awarded $28,660.87 for these damages. Eric claimed he had past wage losses of $102,766; the jury awarded $84,705 for these damages. Eric claimed he had between $636,960 and

$735,460 for future wage losses; the jury awarded $443,853 for these damages. The jury awarded Eric zero damages for past, present and future pain and suffering, and $38,800 for his past, present and future loss of enjoyment of life. After reviewing these figures, our conscience was anything but shocked. The verdict was not excessive, nor did it fail to bear a reasonable relationship to the plaintiffs' damages in this case.

Further, we properly instructed the jury with respect to damages. As we previously stated, it was not error to not give a "substantial factor" charge because it would have been error for the jury to not find a substantial factor where both plaintiffs' and defendant's experts agreed that plaintiff suffered some injuries as a result of the accident. When considering the charge as a whole, we instructed the jury that, under our law, a person is not entitled to recover damages just because he or she was injured in an accident. (Notes of Testimony, 3/27/03, p. 491.) The jury was told that the parties did not agree on the amount of harm Eric suffered and it needed to determine such. *Id.* The court gave the standard instructions on damages and on each of the categories that the jury could consider. The jury was told that plaintiffs must prove their damages with reasonable certainty. (*Id.* at pp. 505-12.) Appellant objected to the charge on damages, asserting that we gave our instruction without any regard to whether or not they related to the accident of February 3, 2000. (*Id.* at p. 518.) This is not so. In fact, every question presented on the special verdict slip instructed the jury to award only those damages related to the accident on February 3, 2000. We went over that form with the jury. (*Id.* at pp. 515-18.) After a side-bar, we also gave additional instructions that just because each

of the questions on the special verdict slip has a place where the jury could put in a dollar amount did not mean that they absolutely must put in some dollar amount as to each question. (*Id.* at p. 521.) It is clear from the verdict that the jury understood it did not have to award any damages if it so chose, because in more than several categories it awarded zero dollars.

Appellant also asserts that she is entitled to a new trial because the verdict was against the weight of the evidence, the damages were against the weight of the evidence and the verdict was the result of passion, prejudice and improper influence. Our review of the record in this case, as evidenced by the discussion above, shows that these issues are without merit.

For the foregoing reasons, we respectfully request that the Superior Court affirm the judgment entered in this matter on July 29, 2003.

[On September 26, 2003, the court amended its opinion by adding a footnote to indicate that where "appellant's counsel" was referenced in the opinion, the court was referring to trial counsel, Thomas K. Ellixson, Esquire.]