J-A15001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CHRISTY CARASSAI, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LOUISE T. ECHELMEIER, PERSONAL REPRESENTATIVE OF THE ESTATE OF THOMAS O. GEHRIS, DECEASED AND RONALD H. FREDERICK, III, | |
| APPEAL OF: LOUISE T. ECHELMEIER, PERSONAL REPRESENTATIVE OF THE ESTATE OF THOMAS O. GEHRIS, DECEASED, | |
| Appellant | No. 2993 EDA 2014 |

Appeal from the Judgment Entered October 7, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 07-04081

BEFORE:  BOWES, MUNDY, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J:                     **FILED OCTOBER 16, 2015**

This is an appeal from judgment entered on a $1,000,000 jury verdict in favor of Christy Carassai for personal injuries she sustained in a February 18, 2005 automobile accident involving Thomas O. Gehris.  Mr. Gehris died during the course of litigation, and Louise Echelmeier, his personal representative, was substituted as a party defendant in the action.  Ms. Echelmeier contends that the trial court abused its discretion in denying her

---

* Former Justice specially assigned to the Superior Court.

motion for post-trial relief requesting a new trial based on an excessive verdict.  After thorough review, we affirm.

The trial court ably summarized the facts as developed at trial:

On February 18, 2005, nineteen (19) year-old [DOB: March 23, 1985] Christy Carassai was a passenger in a car driven by her boyfriend on her way to go snowboarding at Blue Mountain in the Lehigh Valley.  She was a student at Pennco Tech in Bristol working on her automotive technology associate's degree.  Her ambition was to work on cars as an auto mechanic with the possibility of moving out to Colorado to work and go snowboarding.  She had been snowboarding, up to eight (8) hours a day, since she was twelve (12) years old.  She also liked to run, ride bike and jet ski.  She never had problems with her knees until February 18, 2005.  On that day, as the pair came up to an intersection in the far right-hand lane, a car driven by Mr. Thomas O. Gehris turned in front of their car, resulting in a collision.  Appellee flew forward inside the car, her knees breaking the dashboard and her head cracking the windshield. An ambulance arrived and medical personnel examined Appellee. She declined their offer to take her to the local hospital, opting instead to go to the Emergency Room at Paoli Hospital near her home later the same day.  After obtaining X-rays of both her knees and CAT scan of her head, the ER doctor advised Appellee to ice her knees and rest.

Appellee saw her family practice doctor a few days after the accident complaining of pain in both knees.  Her family doctor recommended taking Naprosyn as well as continuing to ice and rest.  When her knee pain had not subsided, she returned to her family doctor and received a referral to see Dr. Kevin B. Freedman for an orthopedic consultation.  Dr. Freedman prescribed physical therapy, which Appellee received.  Appellee was discharged after six (6) sessions of physical therapy in the fall of 2005 and given exercises to do at home.  At that time she may have been feeling better, but she also was not doing much physical activity for fear of aggravating her knee pain. Snowboarding, running, climbing stairs, bending, lunging, squatting or anything strenuous resulted in knee pain.

Appellee returned to her family doctor seeking relief. Appellee saw Dr. Richard Zamarin, another orthopedic specialist who recommended diagnostic arthroscopic surgery. Dr. Zamarin performed the arthroscopic surgery on Appellee's left knee on May 29, 2007, at Paoli Hospital's Surgery Center. This surgery left Appellee in significant pain and unable to walk without crutches for two to three weeks. Dr. Zamarin did not note any significant findings that would explain Appellee's symptoms. Dr. Zamarin found the articular surfaces to be pristine and his postoperative diagnosis was "chronic patellofemoral pain syndrome." Dr. Zamarin referred Appellee for more physical therapy and suggested injections in her knee for relief. Appellee completed the prescribed physical therapy at NovaCare and continued to do physical therapy at home. She experimented with different knee braces to find one that helped while she worked out. Appellee continued to do the home exercises, take Advil and ice her knees, but she still suffered from knee pain.

When Appellee's knee pain gradually worsened, she sought another orthopedic opinion and possible treatment. Appellee presented to Dr. Steven J. Valentino for an examination. Dr. Valentino prescribed an MRI for both knees. Appellee presented for the MRIs on July 14, 2010. According to Dr. Valentino, the MRIs confirmed his diagnosis of chondromalacia patella and tendinopathy in both knees, with left knee pain greater than the right. Dr. Valentino discussed treatment options with Appellee, including more physical therapy, injections, knee braces and, eventually, another surgical arthroscopy, all of which would help temporarily alleviate her pain but would not cure the underlying condition. Dr. Valentino referred Appellee to Dr. Timothy Amann, a sports medicine surgeon, for another opinion. Dr. Amann agreed with Dr. Valentino's assessment and recommended injection therapy to temporarily relieve Appellee's pain and potential arthroscopic surgery. No doctor offered a long-term cure for Appellee's knee pain. Finally, Appellee saw a doctor at the Rothman Institute who also prescribed physical therapy. Appellee complied with the doctor's orders and received two (2) to three (3) months of additional physical therapy in 2013.

. . . .

Christy Carassai and her mother, Mary Arena, testified about Christy's medical care, her constant knee pain and how the injury has limited her activities. Appellee testified that she had graduated second in her class from Pennco Tech with a degree in automotive technology in 2005 but did not apply for mechanic positions because of what that job would entail and the resulting pain in her knees. She described her home physical therapy routine that takes approximately sixty (60) to ninety (90) minutes, four (4) to six (6) days per week. Appellee showed the jury the various knee braces she has worn since the accident that have provided some relief. Appellee also described in detail for the jury all of the activities she can no longer participate in the way she used to, including her passion of snowboarding as well as riding jet skis, biking and running. She explained how just sitting at a desk at her current job would result in knee pain and that the pain would often wake her up at night. . .

Appellee's mother confirmed the affect her daughter's injury and resulting knee pain was having on Appellee's life. She described it as watching her daughter diminish before her eyes.

Appellee also presented the testimony of Dr. Steven Valentino by way of videotape deposition after the court instructed the jury on this evidence. Dr. Valentino explained all of the medical treatment Appellee had received, including a follow up visit to his office on January 29, 2014. He testified that the clinical findings of Drs. Melli, Freedman, Zamarin and Amann were all consistent with his diagnosis because they all found problems with Appellee's cartilage underneath the kneecap. He also testified that Dr. Amman saw positive findings on the MRI as did he. Dr. Valentino explained for the jury what he considered the difference between Dr. Zamarin's arthroscopy findings and the MRI findings. He testified that while arthroscopy may be the "gold standard" for detecting a medial meniscle tear or a ligament tear, the MRI is a better tool to detect damage to the cartilage under the kneecap. Dr. Valentino opined that Appellee has suffered permanent injury and her prognosis is guarded. . .

Finally, Appellant presented the videotaped deposition testimony of Dr. Barry Snyder after the court's same jury instruction on deposition testimony. Dr. Snyder testified that he examined Appellee on November 25, 2008. Other than her knees cracking, Dr. Snyder testified that he found nothing abnormal and no

> impairment as a result of the 2005 motor vehicle accident. Dr. Snyder also testified that he reviewed all of the medical records submitted from Drs. Melli, Freedman, Zamarin, Valentino and Amann and found no objective evidence of impairment and no support for Appellee's complaints of knee pain.

Trial Court Opinion, 12/8/14, at 2-5 (citations to notes of testimony and footnotes omitted).

Ms. Carassai originally commenced this action against both Mr. Gehris, the driver of the other vehicle, and Ronald H. Frederick, III, the driver of the vehicle in which she was a passenger. On February 8, 2012, the parties stipulated to the dismissal of all claims and cross-claims as to Mr. Frederick and the case proceeded solely against Mr. Gehris' personal representative. At the conclusion of a jury trial, the jury returned a $1 million verdict in favor of Ms. Carassai.

Ms. Echelmeier filed a motion for post-trial relief in which she contended that a new trial was warranted because the verdict was not supported by the evidence. She argued that the verdict was excessive and bore no rational relationship to the nature or extent of Ms. Carassai's injuries. In the alternative, Ms. Echelmeier sought a remittitur. Ms. Carassai filed a motion for delay damages. The court denied the motion for post-trial relief, denied a remittitur, awarded delay damages of $142,630.65, and molded the verdict to reflect the addition of those damages.

Ms. Echelmeier appealed to this Court on August 27, 2014.[1] The trial court directed Ms. Echelmeier to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, she complied with that directive, and the trial court issued its Rule 1925(a) opinion on December 8, 2014.

Ms. Echelmeier presents two issues for our review:

1. Whether the trial court abused its discretion in permitting to stand a $1,000,000 damages award when the plaintiff sustained injury only to her knees, received only sporadic and limited medical treatment, did not lose the ability to work, had no economic damages, and demanded less than $50,000 in her Complaint?

2. Whether the trial court's calculation of Rule 238 damages is in error where it is based on an excessive verdict for which a new trial should be granted?

Appellant's brief at 3.[2]

_____

[1] Appellant's appeal from the August 15, 2014 order denying post-trial relief, a remittitur, awarding delay damages, and molding the verdict to $1,142,630.65, was premature as no judgment had been entered. She subsequently filed a praecipe to enter judgment on that order on October 7, 2014, which remedied that defect.

[2] In her Rule 1925(b) statement, Ms. Echelmeier alleged that the trial court erred in not granting her motion for new trial "as the Jury's award of $1,000,000.00 was against the weight of the evidence offered and accepted at trial." She also complained that the trial court erred in failing to grant a remittitur based on the "grossly exorbitant" verdict. On appeal, she does not challenge the trial court's refusal to order a remittitur; she asks only that we reverse and remand for a new trial based on the allegedly excessive verdict. Appellant's brief at 26.

Ms. Echelmeier argues that the amount of the verdict was excessive and the trial court erred in denying her motion for new trial on that ground. As the trial court correctly noted, this Court will reverse a decision denying a motion for a new trial only if the trial court abused its discretion. *Gbur v. Golio*, 932 A.2d 203, 206-207 (Pa.Super. 2007). In undertaking our review, we recognize that the trial court has had the opportunity to observe the demeanor of the witnesses. *Botek v. Mine Safety Appliance Corp.*, 611 A.2d 1174 (Pa. 1992). We will sustain its decision regarding a new trial unless there is a clear or gross abuse of discretion or error of law, which controlled the verdict or outcome of the case.

In *Helpin v. Trustees of the University of Pennsylvania*, 969 A.2d 601, 615 n.9 (Pa.Super. 2009), this Court held that "Where an appellant's claim arises from a challenge to the jury's determination of damages, [appellate] review is highly circumspect." We explained,

> The duty of assessing damages is within the province of the jury and should not be interfered with by the court, unless it clearly appears that the amount awarded resulted from caprice, prejudice, partiality, corruption or some other improper influence. In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence.

*Id*. When reviewing such an order, we begin with the premise that "large verdicts are not necessarily excessive verdicts." *Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 857 (Pa.Super. 2010) (quoting *Hyrcza v. West*

- 7 -

*Penn Allegheny Health System, Inc.*, 978 A.2d 961, 979 (Pa.Super. 2009)).

Ms. Echelmeier alleges that the trial court abused its discretion when it failed to apply the six factors identified by the Supreme Court in *Haines v. Raven Arms*, 640 A.2d 367, 370 (Pa. 1994), in determining whether the jury's verdict was excessive. She sets forth those factors: (1) the severity of the injury; (2) whether the plaintiff's injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony of the plaintiff; (3) whether the injury will affect the plaintiff permanently; (4) whether the plaintiff can continue with his or her employment; (5) the size of the plaintiff's out-of-pocket expenses; and (6) the amount plaintiff demanded in the original complaint. Appellant's brief at 20.

Ms. Echelmeier contends that application of the factors leads to the conclusion that the verdict was excessive. First, she maintains that the injury, which was limited to Ms. Carrassai's knees, was not severe. In support thereof, she points to the fact that treatment initially consisted of three doctor visits and six physical therapy sessions. Although an arthroscopy was subsequently performed, Ms. Echelmeier emphasizes that the surgery was diagnostic and performed only on the left knee. Thereafter, Ms. Carassai underwent brief courses of physical therapy and used over-the-counter medications.

Additionally, Ms. Echelmeier alleges that there was no objective evidence of injury. She argues that the MRI that showed chondromalacia and tendinopathy was interpreted as reflecting only a mild change in condition from the earlier arthroscopy that showed a pristine left knee. Although she concedes that Ms. Carassai's medical expert concluded that her injury is permanent, Ms. Echelmeier complains that there was no explanation for that conclusion.

Ms. Echelmeier next asserts that the trial court had no basis to conclude that Ms. Carassai could not work as an auto mechanic due to her injuries. Moreover, she charges that the trial court totally overlooked the fact that Ms. Carassai did not make a claim for past or future medical bills or other economic loss. Finally, she faults the court for not including any discussion of the fact that Ms. Carassai initially only demanded damages "not in excess of $50,000."

Ms. Carassai counters that the formulaic six-factor test was not adopted in **Haines**, and furthermore, the Supreme Court did not state therein that trial courts are required to apply such a test. The **Haines** Court merely noted that the *en banc* trial court therein applied the various factors, although it found many irrelevant, because the Superior Court recommended that it do so. Nonetheless, Ms. Carassai maintains that consideration of the six factors supports the trial court's finding that the verdict was not excessive and its denial of a new trial on that basis.

Ms. Carassai points to Dr. Valentino's unequivocal testimony that the injuries to both of her knees are permanent and progressive. The chondromalacia and tendinopathy were confirmed by MRI and patellofemoral compression testing. She pursued training as an auto mechanic, but she testified that she cannot perform that work. She is limited to sedentary work, and even then, she experiences constant pain for which she takes medication.

Ms. Carassai explains that she made no claim for medical bills because her automobile–related claim was statutorily limited to damages for pain and suffering under the Pa. Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1701 *et seq*. Furthermore, she maintains that, as a matter of law, special damages are not relevant to the issue of pain and suffering. ***Martin v. Soblotney***, 466 A.2d 1022 (Pa. 1983) (finding no logical correlation between cost of medical services and pain and suffering endured under the under the No-Fault Act, the predecessor to the MVFRL). Ms. Carassai originally filed the case in arbitration, which has a jurisdictional limit of $50,000, because at the time she did not have an expert opinion that the injury was permanent and would worsen over time.

We agree with Ms. Carassai that the term "***Haines*** factors" coined by Ms. Echelmeier is a misnomer. The ***Haines*** Court did not adopt the factors upon which Ms. Echelmeier relies, but merely noted that this Court previously had identified factors that could be considered in determining

whether a verdict was excessive. In *Kemp v. Philadelphia Transp. Co.*, 361 A.2d 362, 364 (Pa.Super. 1976), this Court collected "the various factors appellate courts have considered and which **may** apply in determining whether a particular verdict was excessive." (emphasis supplied). There is no mandate that the factors be weighed. When considering these factors in subsequent cases, this Court has acknowledged that often some of the factors have no relevance to the case. *See Whitaker v. Frankford Hosp. of City of Philadelphia*, 984 A.2d 512 (Pa.Super. 2009); *see also Gbur*, *supra* at 212. The issue before us on appeal is whether the trial court abused its discretion in denying the motion for new trial premised on an allegedly excessive verdict. Preliminarily, we find that the fact that the trial court did not cite the *Kemp* factors and address them *seriatim* is not error or an abuse of discretion. Moreover, the court based its decision on many of those same considerations, to the extent they were relevant.

The issue before the trial court in ruling on the motion for new trial was whether the verdict was so excessive as to shock the conscience and suggest that the jury was influenced by "partiality, prejudice, mistake, or corruption." The court concluded that it was not. The court preliminarily observed that liability was virtually conceded: the parties stipulated that Mr. Gehris was negligent and Ms. Echelmeier did not challenge causation at trial or on appeal. Trial Court Opinion, 12/18/14, at 8, 14. Furthermore, Ms.

- 11 -

Echelmeier did not identify any error in the admission of evidence, in the court's instructions to the jury, or in the conduct of trial generally that would tend to suggest that "partiality, prejudice, mistake, or corruption" may have influenced the verdict.

The trial court thoroughly summarized the evidence and determined that it supported the jury's verdict. It found objective evidence of injury in Dr. Steven Valentino's testimony that the MRI yielded positive findings and that the clinical findings of all of Ms. Carassai's physicians were consistent with his diagnosis of damage to the cartilage underneath both kneecaps. The physician also explained that the arthroscopy did not indicate damage because it was not the best tool for detecting damage to the cartilage under the kneecap. The serious nature of the injury was manifested in Dr. Valentino's opinion that Ms. Carassai's injury was permanent, would likely worsen, and that Ms. Carassai would have to "change her lifestyle" to minimize its impact. Deposition, 3/11/14, at 31-32. Although Ms. Echelmeier's medical expert, Dr. Barry Snyder, testified that he found no objective evidence of impairment, the trial court noted that the jury obviously chose to believe Dr. Valentino's opinion to the contrary, which was its prerogative. As the fact finder, "[a] jury is always free to believe all, part, some, or none of the evidence presented." *Kaufman v. Campos*, 827 A.2d 1209, 1211 (Pa.Super. 2003).

The court pointed to considerable evidence of pain and suffering and loss of enjoyment of life adduced by Ms. Carassai and her mother. They testified about the constant pain and the physical limitations the injury placed on Ms. Carassai's employment and favorite physical activities. Trial Court Opinion, 12/18/14, at 6. Despite obtaining a degree in automotive technology, Ms. Carassai testified that she did not apply for jobs as a mechanic because of the physical demands of such a position and that even sitting at a desk results in knee pain. Although she was a passionate snowboarder, jet skier, runner, and biker before the accident, she could no longer enjoy those activities due to her injury. Ms. Carassai told the jury about the sixty to ninety minute home physical therapy routine that she performs four to six times per week.

The trial court found that there was sufficient evidence in the record to support the jury's verdict. In reaching that conclusion, the court was fully aware that Ms. Carassai initially filed the case in arbitration where the jurisdictional limits were $50,000, as well as her explanation that she did not have expert medical opinion that her injuries were permanent. It also noted that pain is an issue of credibility "uniquely within the purview of the jury." *Majczyk v. Oesch*, 789 A.2d 717 (Pa.Super. 2001) (*en banc*). The court found that the verdict, though "large," was not against the weight of the evidence nor "excessive" in light of the evidence presented. Trial Court Opinion, 12/18/14, at 16. The trial court, "[h]aving heard the testimony and

- 13 -

observed every witness," found that "the jury's decision was not unreasonable, arbitrary, or capricious" and that it should stand. *Id*. at 14.

Ms. Echelmeier suggests that the verdict was driven by partiality or prejudice due to the jury's dislike of defense expert, Dr. Snyder. Appellant's brief at 24-25. She even speculates that the verdict may have been intended to punish or send a message to Dr. Snyder. She argues that the trial court virtually conceded at the argument on motions for post-trial relief that the jury could have been unfairly influenced by its attitude towards the defense expert.[3] Appellant's brief at 25.

Ms. Carassai counters that nothing in the court's comments indicated that the jury's award was a punitive response to the defense expert. We agree. The trial court never suggested that the jury was unfairly influenced by the expert's demeanor. At the argument on post-trial motions, the court

---

[3] Ms. Echelmeier's contention is based upon remarks of the trial court at the argument on post-trial motions. The transcript of that argument is not contained in the certified record. The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. **Commonwealth v. Bracalielly**, 658 A.2d 755, 763 (Pa. 1995). Furthermore, it is the appellant's responsibility to ensure that the certified record is complete. Pa.R.A.P. 1926, 1931(d); **Bennyhoff v. Pappert**, 790 A.2d 313 (Pa.Super. 2001). Ms. Echelmeier supplied the transcript in the reproduced record. Since Ms. Carassai has not objected to inclusion of the transcript in the reproduced record or challenged its accuracy, we may consider it. **See** Comment to Pa.R.A.P. 1921 (citing **Commonwealth v. Brown**, 52 A.3d 1139, 1145 n.4 (Pa. 2012) (Where the accuracy of a pertinent document is undisputed, the Court can consider that document if it is in the reproduced record)).

merely shared its opinion that Dr. Snyder's testimony was not believable. N.T., 7/18/14, at 25. The court perceived the expert as disparaging of Ms. Carassai's counsel and unreasonable in his failure to respond to reasonable questions on cross-examination. The court explained that it watched the jurors as Dr. Snyder testified and their body language indicated that they did not find him credible. Noting that credibility was especially important in this case, the court opined that the jury "had every right to credit the testimony of the plaintiff, her mother, and Dr. Valentino, who unlike Dr. Snyder, came across as a professional." *Id*. at 28. The court merely offered its impression of Dr. Snyder's demeanor to explain why, in its opinion, the jury did not credit the defense expert's testimony.

In sum, the trial court applied the proper legal standard and provided ample support for its finding that the verdict was not excessive, shocking, contrary to the weight of the evidence, or motivated by "caprice, prejudice, partiality, corruption or some other improper influence." *Helpin*, *supra* at 615 n.9. Thus, we find no abuse of discretion in the trial court's denial of a new trial on the record before us. Since our affirmance of the trial court's order denying a new trial leaves the jury's verdict intact, the award of delay damages calculated on that verdict is correct.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/16/2015</u>