**Rice v. 2701 Red Lion Road Associates**

*Thomas J. Duffy Jr.* for plaintiffs.
*Susan M. Dean* for defendant Interlake.

DYCH, *J.,* July 8, 2010—On February 23, 2010, in the second trial in this matter, a jury awarded plaintiff Leroy Rice $12,400,000 for injuries he suffered on September 18, 2001, when defendant Interlake's racking system collapsed and roughly a ton of frozen food product fell on him while he was operating a forklift in his

employer's Philadelphia warehouse. Interlake filed a motion for post-trial relief that I denied on May 4, 2010. I granted Rice's motion for delay damages and molded the verdict to $17,339.797.30. Interlake takes this timely appeal.

## ISSUES RAISED ON APPEAL

Interlake's Rule 1925b, Pa.R.A.P., statement of matters complained of on appeal contains twelve assignments of error, clustered as follows, asserting that I improperly:

(A) limited the scope of the proceedings in contravention of the Superior Court opinion remanding the matter for a new trial;

(B) failed to reopen discovery;

(C) admitted the testimony of plaintiff's life care damages and vocational experts;

(D) granted nonsuit against Interlake on Interlake's cross-claims against certain co-defendants;

(E) contravened both the doctrine of judicial estoppel and the coordinate jurisdiction rule when I dismissed Interlake's cross-claims against certain co-defendants;

(F) denied Interlake's motion seeking remittitur.

## BACKGROUND

At the conclusion of the first trial in this matter in 2006, a jury found that Interlake's racking system was a defective product and that the defect caused Rice's injuries. The jury awarded Rice $10,600,000 which, upon plaintiff's petition for delay damages, was molded to ap-

proximately $12,300,000. Interlake appealed to the Superior Court (767 EDA 2007), arguing, among other things, that the product was not defective, that Interlake was entitled to remittitur, that certain evidentiary rulings were erroneous, and that Interlake's motion for judgment n.o.v. should have been granted. On June 26, 2009, the Superior Court issued an order and opinion remanding the matter for a new trial. *Rice v. 2701 Red Lion Associates Ltd.,* docket no. 767 EDA 2007 (unpublished slip opinion). No party requested reconsideration or an en banc review. The case was assigned to me for all pretrial and retrial proceedings.

Guided by the Superior Court's opinion, I limited the second trial to the issue of damages and to Interlake's cross-claims against co-defendants that had settled with the plaintiff before the first trial. I so advised counsel in a letter dated September 20, 2009. The parties would be allowed to introduce any evidence on liability on the cross-claims that they had introduced in the first trial, including the testimony of certain Interlake witnesses whose testimony had been precluded: lay witness Brian Tumulty (formerly with Rice's employer, Refrigerated Food Distributors Inc, or RFDI) and current or former employees of the co-defendant corporations, namely, Chris Curtis (CurtiService Inc.), Steven Davis (Warehouse Technology) and Raymond Goldberg (2701 Red Lion Road Assoc.). In addition, Interlake was now permitted to present the testimony of two experts previously excluded: Kathleen Murphy R.N. (life care), and Gary Barach (economist). Slip op. at 7. Plaintiff's case on damages would be limited to the evidence he presented in the original trial. N.T., 02/22/10 at 5-7.

Contending that the Superior Court remanded for a new trial on all issues raised in the original trial, including the product defect claim, Interlake initiated certain appeals and petitions that the Superior Court either dismissed or quashed (4 EDM 2010, 335 EDA 2009 and 135 EDM 2009). I regained jurisdiction and the matter proceeded to trial in February of 2010. Rice testified on his own behalf, limiting his testimony to evidence of his pre-2006 damages, notably his prior health, the accident, his hospitalization, his treatment, and his status as a permanently disabled paraplegic. *Id.* at 153-83. Rice also introduced the videotaped testimony of Dr. Todd Albert and the parties' stipulation as to what Rice's economics expert, David Hopkins, would say if he were to appear at trial. *Id.* at 10, 119.

Over Interlake's objection, I allowed Rice to introduce the expert testimony of Kathleen Corrigan, a registered nurse and "life care" planner who opined as to Rice's lifetime medical needs as a result of the permanent, disabling crush injuries he sustained on September 19, 2001. *Id.* at 72-97. I also overruled Interlake's objection to the testimony of Irene Mendelsohn, plaintiff's vocational expert who opined that as of 2006 Rice was permanently incapable of work. *Id.* at 123-33.

Interlake presented no live lay witnesses on its cross-claims against "Red Lion" (the property owner of the warehouse where the accident occurred), Stokes (contractor that purchased the racking system from Interlake on RFDI's behalf) and Schmidt (subcontractor to Stokes for installation of the racking system). Interlake also introduced no expert testimony of its own; it did not introduce the testimony of the previously precluded experts, Kath-

leen Murphy R.N., or Gary Barach. Instead, Interlake elected to rely on: its cross-examination of Rice and a reading from the transcript of Rice's deposition taken before the first trial. N.T., 02/23/10 at 7-25. In addition, Interlake read to the jury selections from: the transcript of the prior trial testimony of Dr. Jeffrey Ketchman, plaintiff's design expert (*id.* at 27-125); the deposition of Brian Tumulty, formerly RFDI's chief financial officer (*id.* at 128-131); the prior trial testimony of Charles Daniel Willis, a former employee of defendant Stokes (*id.* at 132-44); and the prior trial testimony of Raymond Goldberg, owner or partial owner of 2701 Red Lion Associates and Refrigerated Foods Distribution Inc. and its predecessors. (*Id.* at 145-81.) Interlake had dropped all claims against co-defendants Warehouse Technology and CurtiService.

At the conclusion of defendant's case and upon motion by the plaintiff, and after argument by counsel, I found that Interlake had failed to present sufficient evidence to support a prima facie case of negligence against any of the three co-defendants, namely Stokes, Schmidt and Red Lion, and I nonsuited Interlake on its cross-claims then. *Id.* at 182, 193. Accordingly, the matter went to the jury solely on the question of damages.

## DISCUSSION

### A. *The Limited Scope of the Second Trial Was Mandated by the Superior Court Opinion*

Interlake's chief complaint, the one that generated so much pretrial appellate activity, is that I did not permit

re-litigation of the product liability claim on which Rice prevailed in the first trial. It argues that to the extent that the Superior Court opinion addressed Interlake's right to present evidence on its "defenses," it remanded for a complete new trial on all issues, and that I improperly limited the scope of the proceedings to damages and to the cross-claims.

Interlake contends that extant authority holds that limited re-trials are disfavored; Rice argues that this is not so. See *e.g, Quinby v. Plumsteadville Family Practice Inc.,* 589 Pa. 183, 210-11, 907 A.2d 1061, 1077-78 (2006) (holding that Superior Court's erred in granting judgment n.o.v on a wrongful death claim and remanding for new trial on that claim and on damages); *McNeil v. Owens-Corning Fiberglas Corporation,* 545 Pa. 209, 216, 680 A.2d 1145, 1149 (1996) (holding that the Superior Court's erred to the extent that it allowed a new trial on a lung cancer claim and affirming the grant of a new trial limited to non-cancer injury claims); *Thompson v. City of Philadelphia,* 507 Pa. 592, 598, 493 A.2d 669, 672-74 (1985) (holding that Superior Court erred in reversing trial court's order granting new trial and remanding for a new trial limited to apportionment of damages); *Berkeihiser v. DeBartolomeo,* 413 Pa. 158, 163, 196 A.2d 314, 315-16 (1964) (holding that Superior Court erred in granting judgment n.o.v and remanding for a new trial generally). This authority is instructive on a number of levels, but does not address my duty under Rule 2591, Pa.R.A.P., to "proceed in accordance with the judgment or other order of the appellate court." After a close reading of the opinion, I determined that I was guided by the following rulings:

—*it was error to exclude*—on the grounds that Rice was prejudiced or surprised—the *six witnesses necessary to present negligence evidence* against the settling defendants (slip op. at 2);

—*it was error to exclude*—on the grounds that it was "immaterial because it dealt with negligence"—*expert testimony regarding disrepair of the racking system* (*id.* at 13);

—in the absence of evidence that the plaintiff unreasonably delayed the case during a bankruptcy case, *there was no error in calculating delay damages* for that period of time (*id.* at 12);

—in view of the remand Interlake's *cross-claims,* the *verdict form* in the second trial would now *include the settling defendants* (*id.* at 14);

—"to the extent that the now-allowed evidence" touches on intended use, substantial alteration, wear and tea [sic] and misuse of product," *new instructions would be required* and *Interlake's claims regarding the jury instructions are moot* (*id.* at 14-15);

—the *presence at trial of the settling defendants* was left to the sound discretion of the trial judge;

—there was *no error in denying Interlake's motion for a judgment n.o.v.* on the product liability claim. (*Id.* at 15.)

In short, the Superior Court said that: (a) the trial court erred in precluding Interlake's proof of the co-defendants' negligence, that the negligence evidence should be admitted in the second trial, and that the co-defendants should appear on the verdict sheet; (b) Interlake's com-

plaints on jury instructions were moot; and (c) Interlake was to be permitted to adduce evidence that Rice caused delay that reduces his entitlement to delay damages. Those were the instructions to the trial court on remand and those are the instructions I followed.

No matter how I parse the Superior Court's language, I cannot escape the conclusion that it faulted the trial judge's rulings only because they thwarted Interlake's legitimate efforts to point the figure of blame at its co-defendants, not because there was any error in the jury verdict on product liability. Regarding the excluded witnesses, the court was specific: the trial judge had imprudently accepted Rice's claim of prejudice at the number of witnesses Interlake proposed to introduce; in consequence, the judge improperly "precluded Interlake from presenting evidence that would have allowed the jury to consider the claims against the settling defendants." Thus, "Interlake should have been permitted to adduce evidence against the settling defendants and use the evidence the settling defendants had prepared to use against Rice's claim." Slip op. at 2-3. Regarding the six previously excluded witnesses—Tumulty, Curtis, Davis, Goldberg, Murphy and Barach—Rice could not claim surprise because Rice had actual notice of the substance of their testimony, had participated in their depositions and, as to the experts, had received expert reports. *Id.* at 7-8. So, Rice was on notice of Interlake's cross-claims and the fact that Interlake "was going to attempt to shift responsibility from itself to other defendants." *Id.* at 9-10. Since Rice would suffer neither surprise nor prejudice from the "previously precluded evidence," Interlake was now "entitled to a new trial on damages and to allocate

responsibility." *Id.* at 10. On the separate issue of the trial judge's decision to preclude as "immaterial" some of Interlake's expert evidence, the court declared that the evidence of "disrepair of the entire racking system" was specifically relevant to the "negligence aspect of the claim." *Id.* at 13 n.6. In the only reference to the product case, the court said that the trial judge properly had given the issue to the jury.

I reject Interlake's argument that even though the Superior Court said that the trial judge did not err in giving the product liability case to the jury (denying the judgment n.o.v. motion), it somehow also found that the verdict was compromised by errors in the negligence case and should be set aside. I am at a loss to find any such connection in the opinion and nothing in Interlake's extensive briefing or oral argument persuades me that the court's express rulings include, by inference, innuendo, indirection, or implication, the additional unstated instruction that product liability, as decided by the jury, was to be retried. Interlake has pointed to no authority that mandates reading such an intention into the Superior Court opinion that is otherwise silent on the subject. Guided by Rule 2591, I tried the case as it was presented to me.

## B. *There Is No Basis in Law or Fact for Reopening Discovery Upon Remand From the Superior Court*

Interlake contends that I abused my discretion in refusing to reopen discovery and that as a result it was prejudiced in challenging Rice's case on damages. It claims that it was entitled generally to conduct discovery on

changes since the first trial in Rice's circumstances. I denied this request, but I allowed Interlake when cross-examining Rice and his experts to explore what those changes might be. N.T., 02/22/10 at 5-7, 213-19. For whatever reason, Interlake declined to present any expert testimony of its own on how intervening developments may have affected the course of Rice's indisputably permanent injuries after 2006.

I find no authority that mandates or prohibits a trial court to reopen discovery on a case that has been re-manded. Nor do I find any authority for Interlake's argument that Rule 4007.4, Pa.R.C.P., imposes a broad and general obligation to supplement prior disclosures without regard to specific requests. Accordingly, I am guided by the general rule that a trial court is given broad discretion to deal with discovery issues. *Blouch v. Zinn,* 350 Pa. Super. 327, 338, 504 A.2d 862, 868 (1986) (the trial court enjoys broad discretion over the conduct of discovery and will not be overturned absent an abuse of discretion). Further, facing no objection from plaintiff's counsel or from me, Interlake in fact elicited post-2006 testimony from Rice and his experts, adequately apprising the jury that Rice had married, moved to Florida, fathered children, and was able to perform certain personal, custodial functions on his own. N.T., 02/22/10 at 213-19. Interlake offered *no* expert testimony, *even though it was free to do so,* to demonstrate to the jury how these or any other changed circumstances might have reduced Rice's damages. Thus, even if Interlake could demonstrate that Rice had some duty to update discovery, under the circumstances of this case, it cannot show that it was prejudiced.

## C. *The Testimony of Plaintiff's Experts Was Admissible As Competent and Relevant*

Interlake says that I should have precluded as "speculative" the testimony of Corrigan (life care expert) and Mendelsohn (vocational expert) because these experts were not required to update their reports with post-2006 data concerning Rice and, since they had not, the reports were inadmissible.

Interlake does not claim that either Corrigan or Mendelsohn was unqualified. It claims only that since their reports are old, they are unreliable. This is a question of the weight, not the admissibility of the evidence. See *Freed v. Geisinger Medical Center,* 971 A.2d 1202, 1210 (2009) quoting *Miller v. Brass Rail Tavern Inc.,* 541 Pa. 474, 481, 664 A.2d 525, 528 (1995) (the weight to be given to an otherwise qualified expert testimony is a matter for the finder of fact). Interlake succeeded in letting the jury know when the expert reports were written and that the authors had not considered any post-2006 information about Rice's medical, familial or vocational information. The jury was free to determine the significance of this evidence.

Interlake also says that it was prejudiced because it "was not permitted to test [the experts'] assumptions and predictions with current, accurate testimony." Page 13, reply brief of defendant Interlake regarding Interlake's motion seeking post-trial relief. This argument is difficult to dissect because it begs the question whether Rice's experts were current and accurate at the time they wrote their reports, which was the only issue before the jury. If Interlake wanted to demonstrate that Rice's experts

could not present "current, accurate testimony" in 2010 based on pre-2006 information, they were free to do so, and, in fact, did. Interlake was also free to present its own experts to opine on how reports based on old information are unreliable; it chose not to do so. It cannot now complain.

### D. *Interlake's Evidence As to the Co-Defendants' Negligence Was Insufficient To Put the Questions of Duty, Breach and Causation to the Jury*

Prior to trial Interlake voluntarily dismissed its claims against co-defendants CurtiService and Warehouse Technology. The remaining cross-claims required proof of a prima facie case of negligence against 2701 Red Lion Road, Schmidt and Stokes. See *Quinby, supra* at 199, 907 A.2d at 1070 (proponent of a negligence claim bears the burden of showing a duty, a breach of that duty, and that the breach proximately caused the harm suffered); *Deputala v. Owens-Corning Fiberglas Co.,* 425 Pa. Super. 420, 424, 625 A.2d 676, 678 (1993) (a claim for contribution based on negligence requires proof of a prima facie case). At the close of Interlake's case, I directed compulsory nonsuit against Interlake on its claims. My reason for doing so was that Interlake failed to present evidence sufficient to support a prima facie case of negligence as to any defendant. N.T., 02/23/10 at 193. Interlake charges that these decisions were an abuse of my discretion. I am persuaded otherwise.

### I. Co-Defendant Schmidt

Interlake's theory regarding Schmidt was that Schmidt negligently installed the defective racking system in 1979

and that this negligence caused Rice's injuries. Interlake presented no live testimony against Schmidt. Instead Interlake elected to read to the jury from the transcript of the first trial the testimony of Rice's design expert, Dr. Ketchman, and the testimony of Charles Willis, a former employee of Stokes, the pass-through seller of the racking system.

Interlake's evidence was lacking in at least four respects. First, the matter required competent expert evidence and I found that Interlake had presented none. There was no dispute that the issue of racking installation required expert evidence. See *Young v. PennDOT,* 560 Pa. 373, 376-77, 744 A.2d 1276, 1278 (2000) (an expert is required where the skill and special training needed to show deviation from a standard of care or to show causation is beyond that of the ken of the ordinary layman). Interlake's only proposed expert on the issues was Dr. Ketchman, plaintiff's expert on product defect. I determined that Dr. Ketchman was not qualified to offer testimony concerning negligence in industrial racking installation, a determination that is supported by the fact that the witness himself denied having the requisite expertise. N.T., 02/23/10 at 115. Second, and in any event, Interlake elicited no testimony from Ketchman about standard of care for installing racking systems in 1979 and Ketchman gave no testimony to a reasonable degree of *any* professional certainty that Schmidt's purported negligence caused Rice's injuries. At most, he testified that if Schmidt had been negligent the accident would have occurred anyway. *Id.* at 193. Third, not only did Interlake fail to establish the requisite standard of care and causation, it did not even establish that Ketchman

or Willis, a former employee of Stokes and the only other witness testifying about installation, knew with certainty how the system was installed or even that it was Schmidt that had installed it. *Id.* at 101-102, 135-40. Amy jury finding based on this evidence would have been purely speculative.

## 2. Co-Defendant Red Lion

Interlake claims that Red Lion was liable for Rice's injuries because it was the owner-in-possession when the accident occurred in 2001 or, if out-of-possession, was liable because it failed to make repairs of which it had notice. Finding that Interlake failed to adduce sufficient evidence to present the question of Red Lion's liability to the jury, I nonsuited the claim. *Id.* at 193.

My reasons for nonsuiting the case against Schmidt/ Stokes apply equally to Red Lion, namely, that Interlake failed to establish the element of causation necessary to support a prima facie case of negligence. Therefore, even if Interlake could show that Red Lion owed a duty to Rice (and I think it could not), I do not need to reach the questions whether Interlake established which "Red Lion" entity owned the property in 2001 or whether that entity was liable as a landlord-in-possession or as a landlord-out-of-possession whose liability is triggered by some exception to the general rule that landlords are not liable for injuries to third parties on their leased property. *Henze v. Texaco Inc.,* 352 Pa. Super. 538, 541, 508 A.2d 1200, 1202 (1986). There simply is no competent evidence on the record that would support a jury verdict that some failure to repair or correct the racking

system or any other condition in the warehouse proximately caused Rice's injuries. Nonsuit was proper.

### E. *Judicial Estoppel and Coordinate Jurisdiction Cannot Be Invoked To Hold the Plaintiff to Averments in Submissions on Motions for Summary Judgment*

Interlake contends that I erred as a matter of law in nonsuiting its claims against the co-defendants because the doctrines of judicial estoppel and coordinate jurisdiction operated to bar me from finding that there was insufficient evidence to go to the jury. Interlake says that when the co-defendants' motions for summary judgment were denied, without opinion, before the first trial in 2006 the question whether there existed disputed issues of fact had been decided and I was bound therefore to submit the claim of negligence to the jury.

I know of no authority that supports this contention and Interlake's extensive briefs do not change my mind. Interlake cites not one case that stands for the proposition that an order denying summary judgment operates at the end of trial to bar nonsuit that is otherwise proper. I do not know the bases for the orders denying the defendants' motions for summary judgment in 2006 and, therefore, can draw no conclusions about the law or facts that they addressed. More important, the considerations of law and fact on a motion for summary judgment before trial and a motion to dismiss at the end of trial, after all the evidence is in, is different. The first, governed by Rule 1035.2, Pa.R.C.P., is warranted whenever there is "no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery." *Barnish v. KWI*

*Building Company,* 602 Pa. 402, 415, 980 A.2d 535, (2009). On a motion for nonsuit, however, the question is whether a plaintiff has established a right to relief, taking into consideration evidence that the plaintiff (in this case, Interlake) introduced at trial and any evidence favorable to the plaintiff (Interlake) that the defendant introduced. Rule 230.1, Pa.R.C.P.; *Gigus v. Giles & Ransome Inc.,* 868 A.2d 459, 461 (Pa. Super. 2005). The only question I considered—whether the evidence adduced at trial was sufficient to go to the jury—most decidedly had not been previously decided.

Interlake's grievance that Rice switched sides, battling the co-defendants in the first trial and siding with them in the second, cannot be redressed by either coordinate jurisdiction or judicial estoppel. The doctrine of coordinate jurisdiction instructs judges of equal jurisdiction sitting in the same case to avoid overruling each other's decisions. *Ario v. Reliance Insurance Company,* 602 Pa. 490, 505, 980 A.2d 588, 597 (2009). As I have said, I do not know what factors informed the judge's decisions on the motions for summary judgment in the first trial. As I have also said, it does not matter because I was charged with applying a different legal standard to the facts as they were developed at trial. The same is true regarding judicial estoppel, which prevents a party to an action from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained. *Black v. Labor Ready Inc.,* 995 A.2d 875, 878, (Pa. Super. 2010). I do not believe that the first trial was a "previous action" under the rule, but I do not need to answer that question because, even if it were, Rice was not "successful" *at trial* on his claims

of negligence against the co-defendants. Interlake's proposed application of judicial estoppel and coordinate jurisdiction, while inventive, goes too far.

### F. *Interlake Presents No Factual or Legal Basis To Set the Verdict Aside As Excessive or for Remittitur*

Interlake contends that the verdict is excessive and unsupported by the evidence. Its principal argument is that the assigned errors discussed in this opinion operated to deprive the jury of any reasonable basis for calculating damages. Specifically, it says that if the trial had not been limited, if I had reopened discovery and if I had required updated expert reports, the award would not have been as large as it was. It argues it should get a new trial or that the verdict should be reduced to $6,400,000, the amount of Rice's claimed damages, plus non-economic damages.

Even if I erred in the way I conducted the trial, these arguments lack merit. First, Interlake does not say *how* the award is excessive and it does not show how new or additional information would have produced a substantially different amount. On the claim of remittitur, it concedes Rice's claimed damages and pleads with me only to award that amount, plus an amount for non-economic damages. This, apparently, is exactly what the jury did, and Interlake makes no case that it was so outrageous as to be set aside.

Second, I cannot say that the award is so unfair or unreasonable as to shock the sense of justice. *Haines v. Raven Arms,* 536 Pa. 452, 455, 640 A.2d 367, 369 (1994). The evidence was sufficient to support a jury finding that, as a relatively young man, Rice suffered catastrophic

injuries that have left him permanently and painfully disabled, requiring personal assistance for the remainder of his life and leaving him totally unemployable. Under these circumstances, I cannot say that an award equal to two times Rice's economic damages is excessive or exorbitant, nor can I find anything in the record that justifies substituting my judgment for the jury's. *Doe v. Raezer,* 444 Pa. Super. 334, 347, 664 A.2d 102, 108 (1995). I certainly cannot find, nor does Interlake point me to, any evidence that the jury was "influenced by partiality, prejudice, mistake or corruption." *Haines, supra.* Thus, the trial presents no basis reject the jury's work.

## CONCLUSION

I adhered faithfully to the language of the Superior Court opinion remanding this matter and, accordingly, directed a new trial limited to Rice's damages and to Interlake's cross-claims against the settling co-defendants. Interlake was not entitled to new discovery or to updated expert reports. In this regard, I properly exercised my discretion to limit the damages case to evidence available to the parties in the 2006 trial, while also permitting the jury to consider defendant's post-2006 evidence of plaintiff's "changed circumstances." Finding that the defendant failed on its cross-claim to present competent expert evidence of co-defendants' negligence, I properly entered nonsuit as to defendants Schmidt, Stokes and Red Lion. Finally, I find that the jury verdict was not so excessive as to warrant either a new trial or remittit. For these and the foregoing reasons, the judgment should be affirmed.